### WILLIAM SCHWEN v. THE STATE.

#### No. 947.   Decided April 22nd, 1896.

#### 1.  Theft of Cattle—Joint Ownership—Want of Consent.

On a trial for theft of a yearling alleged to be the property of one R. R. Wheatley, and the evidence showed that R. R. and his brother were joint special owners, it was not necessary to prove the want of consent of the brother.   Code Crim. Proc., Art. 445.

#### 2.  Same—Evidence—Acts and Declarations of Co-Conspirators—Charge.

On a trial for theft of a yearling, acts and declarations of a co-conspirator, not in furtherance of the common design, but, declarations in the nature of confessions with attempts to conceal the fruits of the crime, made in the absence of the defendant, and after the conspiracy was ended, are inadmissible as evidence against the defendant; and, being inadmissible, no instructions from the court could relieve the case from an error in admitting them.

#### 3.  Same—Evidence of Other Thefts.

On a trial for theft of yearling, evidence that two calves were stolen by some person living on defendant's place, but it is not shown that they were taken at the same time that the animal in question was taken, is inadmissible, there being no other fact connecting the two transactions.

#### 4.  Improper Evidence—Charge Limiting, etc.—Practice.

The practice of admitting improper evidence, with the promise or expectation of subsequently directing the jury not to consider it, or of controlling it by the charge, is not to be encouraged.

APPEAL from the District Court of Donley.   Tried below before Hon. H. H. WALLACE.

Appeal from a conviction for theft of one head of cattle; penalty, two years' imprisonment in the penitentiary.

The indictment alleged the ownership in R. R. Wheatley, and his brother, T. A. Wheatley, and it was contended that, it was essential to prove the want of consent of T. A. Wheatley, which had not been done.

The other two points discussed in the pinion are illustrated by the two following bills of exception reserved by defendant, viz:   1.   "The State was permitted to prove, by the witness, H. E. Siders, that after he and witnesses, Sullivan and Dunn, went out to the residence of J. A. Schwen, (the codefendant with this defendant) and while this defendant was absent from his said residence and was not present and did not hear any of the statements, acts or declarations made by J. A. Schwen (if made at all); that he, witness Siders and Dunn and Sullivan, called defendant, J. A. Schwen, out to the gate of said J. A. Schwen at about 9 or 10 o'clock at night and told him that he had killed a beef on that evening and they desired to see the hide which came off it.   That J. A. Schwen then put on his clothes and went with witnesses to the slaughter house, and told them the hide was in a barrel in the corner of the room; that they reached in and took from said barrel a hide; that, after trying to examine the hide there and failing to do so on account of the wind blowing out the matches they struck; they, at the instance and suggestion of Mrs.

Schwen, the wife of J. A. Schwen, went to the house or residence of J. A. Schwen, where they could get a light, taking the hide with them; that upon entering the house they spread the hide on the floor and were proceeding to examine it, when the said J. A. Schwen excused himself to go to the water closet, and in a minute or so after he left witness Sullivan hallowed to witnesses Siders and Dunn, telling them he had caught "him" (meaning the defendant, J. A. Schwen); that, immediately thereafter witnesses Siders and Dunn went back to the slaughter house where Sullivan and J. A. Schwen were, and witness Sullivan asked witness Siders to again look in the barrel; Dunn did so, and pulled out the hide of the animal in question in this suit; to all of which defendant objected, because such acts and declarations were done and said (if done and said at all) while the defendant in this case was not present, and while the defendant, J. A. Schwen, was, in fact, under arrest; and such acts and declarations were not assented to by this defendant in any way; and the conspiracy to steal (if any in fact existed) had at that time ended, and because the same was incompetent and irrelevant, and calculated to mislead the jury in arriving at a verdict in said cause."

Which objection the court then and there overruled, to which action of the court, the defendant then and there, in open court, duly excepted and now tenders this his bill of exceptions.

2. And, "Be it further remembered, that upon the trial of the above styled and numbered cause, the State was permitted to prove by the witnesses, H. E. Siders and Sam Dunn, that on the morning after the alleged commission of the offense with which this defendant stands charged, that they, witnesses Siders and Dunn, were at the home of J. A. Schwen, the father and codefendant of this defendant; that they found at the lot of said J. A. Schwen eleven calves, two of which were tied or staked out; that they (witnesses) released all of said calves after driving up a number of cows; that all of said calves went to and began sucking their several mothers; that the two calves that were staked or tied, went to and began sucking cows which were not the property of this defendant nor his codefendant, J. A. Schwen; that one of said cows so sucked by one of the calves was the property of one Trammell; that witness, Siders, had the care, control and management of said cow and her calf, and that said Siders had never given his consent for defendant to take said cow and calf. To all of which said testimony on the part of witness Siders and witness Dunn, the defendant objected, because, it was not shown that this defendant had said property in his possession, nor that anyone else had it in his possession for this defendant, nor that said cattle were taken and held by anyone acting as the agent for this defendant, and that it was not shown that J. A. Schwen had exercised any ownership, possession or control over said calves, and that said cattle, if taken at all, was not shown to have been taken at the same time of the alleged taking of the cattle in controversy in this cause; and further, that it was not shown that this defendant had an connection with the ownership or possession of the two calves men.

37th Tex. Crim. Rep.— 24.

tioned in any way, which objection the court overruled, which action of the court this defendant then and there, in open court, excepted, and now tenders this his bill of exception."

[No brief for appellant.]

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Conviction for the theft of a yearling. The proof supports the allegation that the property belonged to R. R. Wheatley. It was not necessary to introduce the other Wheatley to prove his want of consent. R. R. Wheatley and his brother were the joint special owners of the property. See, Art. 445, Rev. Code Crim. Proc. The acts and declarations of J. A. Schwen and wife were clearly inadmissible. If there had been a conspiracy to steal the yearling, it was ended. Again, these acts and declarations were not in furtherance of the common design, but were in the nature of confessions of guilt, with attempts to conceal the fruits of the crime. Being inadmissible, the error is not cured by instructions from the court. No instructions of the court could relieve the case from such an error. It is the duty of the court to pass upon the admissibility of testimony, and not the jury. If the fact or act is admissible because of another fact, and the latter fact is in doubt or controversy, then the court should instruct the jury, if they believed that fact, then to receive the evidence, but if they do not believe the fact, to reject it. There was no question in this case as to the fact that the conspiracy had ended, nor was any act or declaration done or said by J. A. Schwen, or his wife, in furtherance of the conspiracy. This being true, whether the conspiracy had ended or not, these acts and delarations were not admissible. We refer to the acts and declarations occurring at night, in the presence of Sullivan.and the other witnesses, in the absence of the defendant, after the animal had been killed. Again, the court admitted testimony tending to show that two calves were stolen by some person living at the Schwen place. The rule upon this subject is that, where the property is taken about the same time, or in the same transaction, the other stolen property may become fruits of the crime charged, or it may tend to show the motive of the party accused, or it may develop the whole transaction, being a part of the res gestæ; but, unless it serves one of these purposes, it is not admissible. Now, there is no testimony here that these calves were taken about the same time the yearling was. There is no connection shown between these calves and the yearling at all, in any manner, shape or form. Hence the theft of the calves could throw no light upon this case. It would serve the purpose, however, to show that those people were thieves generally, which is inadmissible. Here, again, we find that the court, instead of rejecting this testimony, submitted it to the jury, and then attempted to limit and define its purpose, when in fact no purpose is discoverable. As above remarked, it is the duty of the court to pass

upon the admissibility of testimony, and not the jury. See this subject discussed in Musgrave v. State, 28 Tex. Crim. App., 57. As said by the Supreme Court, in Railway v. Levy, 59 Texas, 542, "The practice of admitting improper evidence with the promise or expectation of subsequently directing the jury not to consider it, or of controlling it by the charge, is not to be encouraged; for, upon minds misdirected in legal investigations, and excited by sympathy aroused by recitals of apparent hardship, such directions or instructions will usually be found impotent to efface impressions once made." This is the rule in civil cases; and it applies with much more cogency to criminal cases. The judgment is reversed and the cause remanded.

*Reversed and Remanded.*