## J. M. Parnell v. The State.

### No. 3554.   Decided June 26, 1907.

**1.—Murder—Manslaughter—Evidence—Clothes of Deceased—Charge of Court —Singling Out Fact.**

Upon trial for murder, it was error to admit testimony with reference to a certain hat which had spots on it supposed to be blood and gun shot holes through it, and which was like the hat of the deceased and was worn by a co-defendant, but which had no connection with and could throw no light on the homicide, and which was seen after the homicide sometime and not in the presence of the defendant.   It was likewise error to single out this testimony in the charge of the court and comment on its relevancy and importance.

**2.—Same—Charge of Court—Murder in Second Degree—Principal—Manslaughter—Self-Defense.**

Upon trial for murder, where the evidence showed that several parties were engaged in the difficulty, and that there was a question as to whether the defendant or his codefendant inflicted the deadly blow upon deceased; and that defendant interfered in the defense of his son who was held by deceased; and the evidence also showed that defendant knew nothing about the previous assault upon his son by deceased, or as to who was the aggressor when he interfered, the court should have charged the law of principals, and the law of defense of another, and should not have complicated his charge with the law of self-defense, and should not have charged a defense of another against an unlawful attack in submitting murder in the second degree.   The same error occurred in the court's charge on manslaughter.

**3.—Same—Charge of Court—Adequate Cause—Aggravated Assault.**

Where upon trial for murder, there was evidence that defendant interfered for the protection of his son, who was held down by deceased, the court erred in defining the various adequate causes in not instructing the jury that an assault upon defendant's son might be adequate cause; and the court should also have instructed on aggravated assault, as the evidence suggested that the defendant's act was not perhaps the cause of the death of the deceased.

**4.—Same—Charge of Court—Intent—Codefendant.**

Upon trial for murder, where the evidence raised the question whether the defendant's act or that of a codefendant was the cause of the death of the deceased, it was error in the court's charge on manslaughter to make the defendant's guilt depend on that of his codefendant, without basing defendant's criminality upon his own intent.

**5.—Same—Criminal Intent—Knowledge of Defendant.**

Where upon trial for murder, it appeared that the defendant interfered in a difficulty between his son and deceased, and knew nothing as to who was the aggressor in said difficulty, testimony as to said prior difficulty should have been excluded, unless it was shown that defendant had some guilty knowledge concerning said previous difficulty.

**6.—Same—Assault With Intent to Murder—Aggravated Assault.**

Where upon trial for murder, the evidence showed that defendant after the first difficulty with deceased again fired at deceased, but without deadly effect, the court should have charged upon assault with intent to murder and aggravated assault, since the evidence raised the question as to whether defendant or his codefendant was the cause of the death of the deceased by a wound inflicted during the first difficulty.

Appeal from the District Court of Henderson. Tried below before the Hon. B. H. Gardner.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*A. G. Greenwood, G. W. Allison, Jno. S. Prince, Watkins, Green & Richardson,* for appellant.—The verdict in this case is contrary to and unsupported by the evidence in that, (a) It is admitted that deceased was not killed by violence inflicted by defendant. (b) It is further in testimony that deceased died from the effects of shock resulting from a pistol shot by Tom Snowden and wounds on the head inflicted with a club in the hands of Winton Parnell, or some other party than defendant; that at the time said Snowden fired said fatal shot this defendant was engaged in stopping a difficulty between Winton Parnell and one Jim Dickerson, and the evidence is undisputed that this defendant stopped that party who was inflicting the violence upon deceased with a club and not only took the club away from the party using it, but dragged said party away from deceased; (c) It is further in evidence that the only violence inflicted by defendant upon deceased was as he ran to the scene of the conflict after he had been informed that deceased was killing his son, and acting upon such information, the relative strength and size of the parties and the position in which he found them when he arrived, he had a right to assume that his son, Winton Parnell, was in danger of death or serious bodily injury at the hands of deceased, and so assuming he did no more than the law under the circumstances authorized him to do. (d) The evidence shows that the violence inflicted on deceased by appellant was not fatal and that he did not encourage the parties who inflicted the violence which resulted fatally.

*F. J. McCord,* Assistant Attorney-General, *M. E. Richardson* and *W. R. Bishop,* for the State.—There was a conflict in the evidence of the witnesses as to whether the defendant Parnell, after the deceased had been beaten over the head with a pistol, and about the time he was knocked off Winton Parnell fired a shot at deceased's head. The evidence that Roberts' hat disappeared and was found in the possession of one of the codefendants that night and in the possession of another codefendant the following day, with the admission substantially of defendant that this was Roberts' hat, but that he denied shooting the hole in it, and as evidence that he did not say that it was powder burned; that said hat was destroyed and could not be produced, was admissible to prove the fact that defendant did fire said shot, the same being competent and admissible evidence in the case.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at three years confinement in the penitentiary.

This is the second appeal of this case. The former appeal will be found in the 50 Texas Crim. Rep., 419, 17th Texas Ct. Rep., 331. We adopt the statement of facts in said last decision for this opinion with the following qualifications:

The record before us shows that appellant shot at deceased while he was sitting astride appellant's son, and it also shows that after deceased was wounded by appellant's codefendant Snowden, and got upon the depot platform, and started down same, that appellant again shot at deceased. The evidence, however, does not show that either of the shots hit the deceased, but it conclusively shows that Snowden alone shot deceased. The doctors testify that it was the blows upon the head by appellant and his codefendant Snowden, and the wound that Snowden inflicted upon deceased that caused the death. The testimony of the physicians further shows that the wound would probably have killed without the blows, and the blows might have killed without the wound, since the evidence shows the deceased's head was fearfully bruised from wounds caused from licks with a pistol on the head, and that the skull in one place was broken. If these facts here collated were in the record on former appeal, we overlooked same, but they are here collated for a discussion of the questions that will now be considered in conjunction with the statement of facts as disclosed by the prior opinion.

Appellant's first assignment of error complains that the court permitted the witness Bill Roberts to testify that on the night of the killing, and some hours thereafter, that he saw Ed Fancher, one of the parties charged with the killing, at the drug store in Poynor wearing the hat of deceased, this defendant not being present; and in permitting the witness A. Grayson, deputy sheriff, to testify over defendant's objection that early the next morning after the difficulty, he saw Winton Parnell, son of appellant, and another one of the parties charged with the offense, at Winton Parnell's home two miles from Poynor, and that said Winton Parnell had on a white hat with blood on it, the defendant not being present at the time; and in permitting the witness S. A. Swanson to testify over the objection of appellant that he saw Winton Parnell on the next day after the difficulty, about 11 o'clock, and that said Winton Parnell exhibited to witness a white or light hat with blood on it, and that said hat had three bullet holes in it, the defendant not being present. This evidence was not admissible. We so held in the former opinion in reference to the testimony of Bill Roberts about seeing Fancher with the hat. Neither of the hats were identified as appellant's hats. The witness said he thought it was appellant's hat, but if it was appellant's hat, certainly to introduce the fact that the codefendant had stolen deceased's hat in the prosecution against appellant for killing the deceased could not be admissible, or if he inadvertently took the hat after an indiscriminate fight, it ought not to form a link in the criminative facts against appellant for killing the deceased. If the witness knows that a certain hat is the deceased's

hat, and he sees said hat at the difficulty or after the difficulty, and it has blood on it, this fact alone might be provable, or if it had gun shot holes through same, this might be provable, if said facts illustrate any phase of the evidence in the case then on trial, but simply to prove that a codefendant had on a hat that looks like deceased's hat, which hat had blood on it, could serve but one purpose, and that is to prejudice the jury against appellant. All the hats introduced could not have been deceased's hat, and if Winton Parnell's hat had bullet holes in it, they certainly must have been placed there after this difficulty, or prior to it, and hence they were not provable in this case, against appellant at least, since it would be evidence of the fact that appellant's codefendant was manufacturing evidence, if they were placed there after the difficulty, and therefore would be injurious to the rights of appellant, or might be. If either of the parties to this difficulty had on a certain hat, and that certain hat is subsequently identified in any condition that illustrates or throws light upon any phase of the evidence in the trial of either of the parties who were charged with this homicide, it would be admissible as testimony for that purpose, but we are at a loss to see any connection of either of these hats with this case; that the deceased had blood all over him was established by boundless testimony; that he was severely and brutally beaten over the head is conceded; that he received a mortal wound from which he died is admitted. Now, therefore, we say that the hats could not have illustrated any phase of the evidence as disclosed by this record. Furthermore, the admission of this testimony was rendered doubly harmful by the following charge of the court: "There has been introduced before you certain evidence regarding a hat seen in the possession of Ed Fancher at the drug store on the night after the killing; there was also introduced evidence concerning a hat seen in possession of Winton Parnell the next or second day after the killing at his home two miles from Poynor. There was also evidence introduced by the witness Swanson as to statements of the defendant J. M. Parnell in reference to said hat. You are now instructed that said evidence was admitted on the theory, as contended by the State, that said hat was worn by the deceased Roberts at the time of the difficulty, and to be considered by you only on the issue as to whether the defendant shot at Wash Roberts at the time of the difficulty and about the time he was knocked or being knocked off Winton Parnell, and for no other purpose; now if you fail to find beyond a reasonable doubt, by all of the evidence so introduced that said hat was the same worn by said Roberts at the time of the difficulty, you will not consider said evidence for any purpose at all, but if you find beyond a reasonable doubt that said hat was the same so worn by said Roberts at the time of the difficulty you may consider the same with other evidence whether the defendant did so shoot at said Roberts at the time and place above mentioned, but for no other purpose. And if you do not so find that said hat was the same so worn by said Roberts at the time of the diffi-

624 51 Texas Criminal Reports. [Austin,

culty you should not consider for any purpose such evidence nor the argument for the State relating thereto." Appellant objects to this charge for many reasons: First, it singles out a sharply disputed point in the evidence, and tells the jury what the State's theory was as to that issue and to what evidence they might look to decide said issue, and assumed that if the hat testified about was worn by the deceased during the difficulty that it would show that defendant shot at him; second, said instruction was directly upon the weight of the evidence; third, the expression, "There was also evidence introduced by the witness Swanson as to the statements of defendant J. M. Parnell in reference to said hat," directly assumes that the hat testified to by Bill Roberts as being the hat of deceased was the same hat testified to by the other witnesses as being seen in possssion of Winton Parnell, when in fact such assumption was not remotely suggested by the evidence; fourth, said instruction ignored the only element in said evidence favorable to defendant, to wit: That Bill Roberts saw no bullet holes in the hat he saw in the possession of Winton Parnell, and that no bullet holes were seen in any hat until Winton Parnell exhibited his hat to the witness Swanson on the day after the difficulty. All of these objections are well taken to this charge. It is never permissible for a court to single out the evidence and charge upon same, and this charge is not a limitation of the evidence, but a pertinent comment thereon emphasizing its relevancy and importance to the jury. This is never permitted. See Schwen v. State, 35 S. W. Rep., 172; Short v. State, 61 S. W. Rep., 305; Conde v. State, 34 S. W. Rep., 286; Barnes v. State, 39 S. W. Rep., 684; McGee v. State, 66 S. W. Rep., 562, and Nelson v. State, 67 S. W. Rep., 320.

Appellant objects to the following charge of the court: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon or instrument, reasonably calculated and likely to produce death by the mode and manner of its use, unlawfully and of his malice aforethought and not in a sudden transport of passion aroused by adequate cause and not in defense of himself or another against an unlawful attack, reasonably producing a rational fear or expectation of death or serious bodily injury, with the intent to kill, did shoot or strike or shoot and strike and thereby kill Wash Roberts, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment," etc. Appellant objects to said charge on the following grounds: First, it was not contended that the defendant killed deceased, nor acted in self-defense, hence said instruction was without evidence to support it; second, other parties present did the killing, and this instruction should have contained the law of principals or a reference thereto as a guide for the jury in determining defendant's responsibility; third, under this instruction the attack upon the person in behalf of whom defendant interfered must be unlawful before defendant would be justifiable, when in fact this defendant had no means of knowing nor could not determine at the

time and does not yet know whether the attack of Wash Roberts upon
Winton Parnell was unlawful or not. Appellant is mistaken as to the
first objection. There is evidence in this record that appellant beat
the deceased over the head with a pistol, causing a very serious injury;
in fact, the doctor testified that his skull was broken, and that this
injury might have produced death, but the court should have charged
on the law of principals in connection with this charge if appellant, in
conjunction with others, actuated by implied malice, as the law of
murder in the second degree states, beat or bruised or assisted, aided
or abetted in this killing, he might be guilty of murder in the second
degree. But the court erred in charging the jury that appellant would
be guilty of murder in the second degree if it was not in defense of
another against an unlawful attack, since the evidence in this case
shows that appellant, from his own standpoint, knew nothing whatever
about the previous assault upon his son Winton Parnell, or whether
his son or the deceased was the aggressor. Now, we would not be
understood that appellant could not be guilty of murder in the second
degree, but the charge the court gave is a stereotyped charge where a
third party is not involved in the difficulty. If Winton Parnell was
engaged in the difficulty with Wash Roberts, the beginning and cause
of said difficulty being unknown to appellant, and he with implied
malice made an assault upon the deceased, he would be guilty of
murder in the second degree. This might be true whether the assault
of deceased upon appellant's son was lawful or unlawful. But this
question has passed out of the case, and we merely discuss it under
the earnest insistence of appellant, since the court had embodied the
same idea in his charge on manslaughter. The court should have
charged the jury, without any complication, upon the law of prin-
cipals, and the law of self-defense of another, and should not have
complicated the same with the law of self-defense. See Red v. State,
47 S. W. Rep., 1004; Leslie v. State, 57 S. W. Rep., 660; Garza v.
State, 48 Texas Crim. Rep., 382, 13 Texas Ct. Rep., 720, and other au-
thorities cited in the former opinion. In these suggestions we would not
be understood as attempting to lay down a charge, but we repeat that if
appellant went to the scene of the difficulty, and the deceased was astride
his son, evidencing the fact that he was beating him, or it so appeared
to appellant, he would have the same right of the defense of his son,
and to act from his standpoint, just as his son would act, and slay the
deceased if necessary in order to protect his son from death or serious
bodily injury, but if appellant was acting from malice, either express
or implied, and killed the deceased because he had made or was mak-
ing an assault upon his son, why he might be guilty of murder in the
first or second degree, according to the facts in each case. But if
appellant, as stated, more than once in this opinion and former opin-
ion, was merely acting in the defense of his son, in the violence that
he administered to the deceased with the purpose to protect his son
from death or serious bodily injury, and this alone was his purpose,

he would not be guilty of any offense at all, but would be entitled to a verdict of not guilty on the ground of the defense of his son in the difficulty. The same error appears in the charge of the court on manslaughter,· which is as follows: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon in a sudden transport of passion aroused by adequate cause, as the same is herein explained, and not in defense of himself or another, against an unlawful attack reasonably producing a rational fear or expectation of death or serious bodily injury with intent to kill, did with a pistol strike or shoot or strike and shoot and thereby kill Wash Roberts, the deceased, as charged in the indictment, you will find the defendant guilty of manslaughter," etc. Appellant objects to this charge for the following reasons: First, It had no foundation in the evidence for the reason that there was no contention that defendant killed deceased, nor was it contended that he acted in self-defense; second, The court's coupling self-defense, which was not in the case, with defense of another; third, In view of the fact that deceased was killed by other parties, defendant could not have been guilty of manslaughter, and fourth, This instruction made defendant's justification depend upon deceased's attack on Winton Parnell being unlawful. We have reviewed all of these objections to the charge on murder in the second degree and think they are all well taken. If appellant went to the scene of the difficulty with Snowden, and upon reaching same found the deceased sitting astride his son, apparently engaged in beating him, and he and Snowden, acting together, beat deceased over the head with a pistol, and one of them shot him (deceased) while both were acting together in the pursuance of a common intent and purpose, and both were agitated to such an extent as rendered their minds incapable of cool reflection, and while laboring under such passion aroused by adequate cause, they beat, shot and killed deceased, each might be guilty as principal of the offense of manslaughter. As stated, in view of the verdict in this case, it is not necessary to discuss whether they might be guilty of murder in the second degree or not, but the court, in framing his charge on another trial, should charge on the doctrine of principals, because the evidence does not conclusively show that appellant by his own act killed the deceased, but the evidence does suggest that appellant in conjunction with Snowden did kill the deceased, or at least the issue is raised by the State's evidence. As stated in the beginning of this opinion, the evidence shows appellant did shoot at deceased while he was astride his son, but the evidence conclusively shows that he missed him, and that Snowden shot him, and that appellant and Snowden both beat him over the head inflicting serious if not deadly wounds upon his head. Now, it is clearly improper, as stated above, to predicate appellant's right of self-defense upon whether or not his son's act was unlawful. His son might have been, and doubtless, under this record, was the drunken aggressor and guilty agent in bringing on this homicide, but the evidence before us, al-

though it shows that appellant was at his mill fifty or sixty yards away, did not know of any of the antecedent acts of his son, or what cause produced the immediate difficulty. If he did not, neither under the moral law nor the law of this State could he be held amenable to punishment for any purpose save and except that which actuated his own breast.

Appellant's sixth assignment of error complained of is that the court defined various adequate causes, but did not tell the jury that an assault upon appellant's son might be adequate cause. This should be done upon another trial of this case. In this connection we will also say that, in view of the fact that the evidence suggests that perhaps appellant was not the cause of the death of the deceased, upon another trial the court should tell the jury that if appellant was laboring under such a degree of anger and rage as rendered his mind incapable of cool reflection on account of the fact that his son was in danger of death or serious bodily injury, and laboring under same he inflicted upon deceased's head blows that did not cause his death, that he could not and would not be guilty of any higher grade of offense than aggravated assault, and this would be true if they had a reasonable doubt as to whether this was true or not. See Ware v. State, 47 Texas Crim. Rep., 546, 15 Texas Ct. Rep., 400; Milrainey v. State, 28 S. W. Rep., 539; Bracken v. State, 29 Texas Crim. App., 366; Warthan v. State, 55 S. W. Rep., 57, and Byrd v. State, 47 S. W. Rep., 724.

Appellant objects to the following charge of the court: "But if you find that the defendant J. M. Parnell and Tom Snowden or either of them did strike or shoot and thereby kill Wash Roberts, in the heat of passion aroused by adequate cause, then defendant could not be convicted of any higher offense than manslaughter." Appellant insists that this charge is erroneous in that it permitted appellant to be convicted of manslaughter if Snowden was guilty of manslaughter, no matter what appellant was doing at the time, this instruction permitted this conviction therefor. This criticism is correct. We urgently insisted in the previous opinion that the court should carefully guard the rights of appellant and base his criminality upon his own intent. If Wash Roberts was shot in the heat of passion by Snowden, without any co-operation, aiding or abetting, advising, assistance or encouragement from appellant, appellant would be guilty of no offense whatever, as to that particular act, but if appellant was encouraging, aiding and abetting Snowden to kill, in a sudden transport of passion, he would also be guilty of manslaughter.

We have carefully read this record, and in our opinion there is nothing in same that shows that appellant knew anything about the previous difficulty between his son and deceased, and all he knew about it was when he came upon the scene. This being true, we would suggest upon another trial that the evidence be limited to what the proof shows appellant saw and did, not what occurred prior to that time, since the evidence on these questions could merely prejudice appellant in the

eyes of the jury, and throw no light upon his criminality. This would have been suggested in the former appeal, but it occurred to us then, under the evidence, there were some meager circumstances suggesting some knowledge on the part of appellant of the previous difficulty, but after a more careful perusal of this record, we find no such evidence. We, therefore, suggest that if the evidence upon another trial does not demonstrate some guilty knowledge on the part of appellant of the previous difficulty, it would be both unwise and unjust to prove the details of the drunken harangue and quarrels of the parties leading up to the difficulty, since it could not illustrate or make manifest appellant's intent, nor throw any degree or character of light upon his purposes. This is what we term irrelevant testimony; any testimony that does not shed some degree of light upon the criminal purposes or defenses of appellant is clearly inadmissible testimony. We, therefore, suggest that if upon another trial there is nothing suggesting guilty knowledge on the part of appellant of the former difficulty, that no evidence be introduced on the matter whatever. The evidence in this case, in addition, shows that after appellant and Snowden beat deceased over the head, deceased was shot by Snowden, and he (deceased) started away and got up upon the depot platform at the little town of Poynor where the difficulty occurred, and at that juncture there is testimony in this record showing that appellant fired at the deceased again. If the evidence suggests this phase on another trial, the court should charge upon assault with intent to murder, and aggravated assault, since both issues are presented by said evidence. If appellant was actuated by malice in the first or second degree, it would be assault with intent to murder; if his mind was rendered incapable of cool reflection by the previous difficulty with his son, and the fight that ensued, and he fired anew at deceased, then he might not be guilty of any higher grade of offense than aggravated assault.

We believe we have discussed all the questions raised by appellant in his able brief, or at least that will likely arise upon another trial of this case.

For the errors pointed out, the judgment is reversed and the cause remanded.    *Reversed and remanded.*

DAVIDSON, Presiding Judge.—I concur in result.

HENDERSON, Judge.—I concur in the result, but do not agree to some of the propositions and discussion thereof in the opinion. I do not believe that the stenographer's report shows that appellant took his bills of exception to the admission or rejection of testimony in such shape as to require same to be reviewed. If it be conceded that the bill of exceptions with regard to the hat alleged to have been worn by the deceased at the time of the homicide is in such shape as presents the question, I do not think the court committed any error in admitting said evidence.

The conviction in this case being for manslaughter, the correctness of the court's charge on manslaughter, self-defense, and defense of another is only involved. An examination of the court's charges, in connection with the requested charges on said subjects, which were given, in my opinion properly safe-guarded all of appellant's rights. The court, however, gave a charge on the evidence with regard to the hat alleged to have been worn by deceased. The testimony on this subject was original evidence, and the court had no right to single it out, and to charge the jury in regard thereto. The effect of the court's instruction on this subject was tantamount to telling the jury to consider same on a vital point in the State's case, to wit: as to whether appellant fired a shot at deceased. This, in my opinion, was such error as must cause a reversal of the case, and on that ground I concur in the disposition thereof.