### ED BEARD V. THE STATE.

#### No. 12.    Decided December 1, 1909.

**1.—Murder—Accomplice—Conspiracy—Principals.**

Where, upon trial for murder, the defendant was charged as an accomplice by reason of advising the killing and agreeing to avert suspicion from his principals, there was no error in admitting testimony to show that the parties with whom defendant agreed were principals and properly limiting this testimony to said question.

**2.—Same—Evidence—Principals.**

Upon trial for murder, where evidence was introduced with reference to the principals in the crime, the defendant being on trial as an accomplice, such testimony should have been properly limited to the question of principal, so that it could not be appropriated directly against the defendant.

**3.—Same—Charge of Court—Singling out Facts—Circumstantial Evidence.**

Where, upon trial for murder, defendant was tried as an accomplice by agreeing to make certain tracks at the scene of the homicide to avert suspicion from his principals, it was reversible error in the court's charge to assume the fact that there was an agreement between the defendant and his principals to make such tracks, and that the testimony on this point was circumstantial. This was a charge on the weight of the evidence. A charge on circumstantial evidence must cover all the facts, and not one particular fact. Following Parnell v. State, 51 Texas Crim. Rep., 620, and other cases.

Appeal from the District Court of Limestone. Tried below before the Hon. L. B. Cobb.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*M. Herring,* and *Harper, Jackson & Harper,* and *Williams & Williams,* for appellant.—On question of court's charge on the weight of the evidence and on circumstantial evidence, cases cited in opinion.

*F. J. McCord,* Assistant Attorney-General, and *Luther A. Johnson,* and *Tom Connally,* for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted as an accomplice in the murder of Tilden Goode and allotted a life sentence in the penitentiary.

The evidence shows that deceased and his wife, Mrs. Pearl Goode, and appellant and his wife were neighbors, both living on the place

of Mr. Derden, who was the father-in-law of appellant, Mr. Derden residing at Wichita Falls. Some time about midnight on the 25th of June, 1908, Tilden Goode was shot to death with a shotgun while lying in his bed asleep. In a separate bed in the same room slept his wife, who evidently had not retired for the night at the time of the homicide. Some 400 yards a little southwest of the house occupied by deceased and his wife resided appellant and his wife. Joe Dorsey, a negro, slept in a little room built on the west end of the front gallery of deceased's house. There are eleven counts in the indictment charging appellant as principal in some of them, and as an accomplice in the remaining counts. The counts relied upon charged that appellant agreed with Mrs. Goode and Joe Dorsey to make certain horse tracks about the residence of the Goodes in order to avoid suspicion on their part when they killed Goode, and in order to leave the impression that other parties or another party had gone to the residence of Goode and shot him to death. The court submitted alone for the consideration of the jury the theory that appellant as such accomplice in advising the homicide had agreed to make the horse tracks for the purpose of diverting attention from Mrs. Goode and Dorsey who were to do the killing. There is no evidence in this case of a positive nature showing, or to the effect that there was any agreement between the parties that appellant should make the tracks mentioned. Dorsey testified for the State that Mrs. Goode told him that appellant had said to her that the killing must occur on that particular night, and that he, appellant, would make the horse tracks so that it would be believed that other parties did the killing. Dorsey, appellant and Mrs. Pearl Goode were all indicted for the homicide. Dorsey turned State's evidence; Mrs. Goode did not testify. Dorsey states in his evidence that Mrs. Goode killed her husband, and all the evidence shows that appellant was not present, and the State's theory, and all the testimony sustains the theory, is to the effect that he, appellant, was not present but was at home asleep at the time of the homicide. Just after the shooting Mrs. Goode sent the witness Dorsey to appellant's house to ask him to telephone for Mr. Harris, deputy sheriff, to come. That Dorsey went to appellant's house, and after calling him three or four times succeeded in arousing him. Appellant telephoned Harris, and went over as requested to the residence of the Goodes, preceding Mr. Harris and another witness fifteen or twenty minutes. The State relies upon such circumstances as could be gathered from the testimony to sustain the theory that appellant had previously advised the homicide. Dorsey testified that appellant had on two or perhaps three occasions prior to the homicide talked with him and tried to enlist his services to kill deceased, but that he, Dorsey, declined any and every proposition. He knew nothing himself of any conversation between Mrs. Goode and appellant, if any occurred, looking to the proposed fabrication of a defense in advance by riding a

horse near the residence of Goode; all that he knew about that was what Mrs. Goode told him. The evidence in regard to the horse tracks is very conflicting and contradictory. All the evidence agrees that there were horse tracks leading from the front gate up to near the residence, about 400 yards. The evidence is in very serious conflict as to whether there was one or two horses ridden there on the occasion. Some of the witnesses testified there were two horses, and some only one horse. There is evidence to the effect that Wednesday night preceding the killing on Thursday, two men came to the house of Goode and engaged him in a personal difficulty, and that Mrs. Goode succeeded in separating the parties, and they went away. That her husband refused to tell her the occasion of the trouble, and said it was a trivial matter. With reference to the horse tracks made on Thursday night, the evidence, as before stated, is conflicting as to whether there were tracks of one or two horses, and the conflict is equally if not more serious in regard to the peculiarities of the tracks, and whether or not they corresponded with tracks made by the horse of appellant, which the State sought to show was ridden on that occasion. Most of the evidence is to the effect that appellant's horse was shod all round, and that the shoes were smooth. The witnesses contradicted each other rather cogently as to whether the tracks made were made by a horse with smooth shoes or with shoes that had cork on them. It had rained in the evening, and the ground was muddy, rendering it very difficult to tell anything about the tracks. The sheriff engaged in the search for tracks, and testified about as follows: "I examined these tracks, but they were made just after the rain and the ground was muddy, having been recently plowed, and no one could tell anything about them. I could tell that they were horse tracks, but could not distinguish whether or not the horse had on shoes or was barefooted. Sam Fife, Will Fenton and others were there. I led the horse of the defendant along beside these tracks to make a comparison and see if it was anything like the horse's, but I could not tell anything about it on account of the ground being so wet when the first tracks were made, and the horse bogged in it so that I abandoned that part of the search, and gave it up." On Thursday before the killing at night deceased had worked this particular horse, plowing about the premises where the killing occurred, and that night had turned the horse in a little pasture that he and appellant used jointly. The State undertook to show a motive, the substance of which was that the relations were such between appellant and Mrs. Goode as to indicate undue familiarity. This became an issue in the trial, and was strenuously denied by appellant and the testimony he introduced. The evidence also shows that the families were intimate with each other and visited and waited on each other in their sickness, and that there were two or three occasions that called for the assistance of one family towards the other during such sickness. It is also shown that there

was trouble between Mrs. Goode and her husband of a domestic nature. Joe Dorsey testified before the grand jury which evidence was introduced before the jury, in which he states, in substance, that appellant had nothing to do with the killing, and knew nothing about it, and also stated that Mrs. Goode killed her husband. Without going into a further detailed statement of these matters, we are of opinion this sufficiently shows the general outline of the case.

1. Under the counts submitted by the court appellant was convicted, as before stated, as an accomplice by reason of advising the killing in that he agreed to make the horse tracks in order to avert suspicion from Mrs. Goode and Dorsey. It was then necessary for the State first to prove that Mrs. Goode and Dorsey were principals in the transaction, and, second, that appellant was an accomplice in that he agreed to advise the killing and agreed to make the aforesaid tracks. There are a number of bills of exception reserved to the ruling of the court admitting testimony in regard to the acts and declarations of Mrs. Goode and Joe Dorsey. The court qualifies each of these bills to the effect that they were admitted against Mrs. Goode or Joe Dorsey, as evidence of the fact that each or both of them were principals in the transaction, and so instructed the jury. It was incumbent upon the State to prove the fact that these parties were principals as a prerequisite to show that appellant was an accomplice. The court undertook to confine this testimony in his charge to the jury to its proper office. Most of this evidence was admissible under this theory of the case.

2. Appellant also objected to evidence of the trouble occurring between deceased and the two parties on Wednesday night before the killing on Thursday night. This was not evidence against Mrs. Goode to show that she was a principal in the homicide, unless this was a part and parcel of her scheme to fabricate testimony and this is not made to appear. If so, this might be used against her to show that she was prearranging a plan for the homicide, but with this appellant has no concern. Dorsey seems not to have been connected with this matter. It is not undertaken by any of the testimony to show that if such was the case, that appellant was in any way connected with it, for from any view of the case, the first statement from him in regard to making horse tracks occurred on Thursday. It is, therefore, not evidence against appellant, and could not be used against him, and it may be seriously doubted if the charge of the court sufficiently guarded appellant against this testimony. So, upon another trial, if this testimony is admitted, the jury should be properly instructed with reference to it, as only tending to show Mrs. Goode was a principal.

3. The court gave this charge: "There is no witness testifying directly that defendant agreed to make tracks to and from the house of Tilden Goode, any evidence on that point is circumstantial, and

you will not be warranted in believing he did so unless all the circumstances necessary to establish the fact have been proven by evidence beyond reasonable doubt, and are found to be consistent with the claim that he made the agreement to make the tracks and to be consistent with each other and inconsistent with any other reasonable conclusion, and establish beyond reasonable doubt that he so agreed, and if you have any reasonable doubt that defendant made the agreement to make the tracks to induce the commission of the crime and to divert suspicion of Pearl Goode and Joe Dorsey as the guilty parties you cannot consider the tracks as any proof against the defendant nor conclude that he agreed to make them." Various and sundry objections are urged to this charge. We are of opinion they are well taken. This is clearly on the weight of evidence. It singles out one fact in the case and instructs the jury with reference to circumstantial evidence as to that fact alone. The rule of circumstantial evidence covers all the facts in a case and not one particular fact. This charge, it will be noted, first, informs the jury that no witness testified directly to the fact that appellant agreed to make tracks to and from the house of deceased; second, it directly tells the jury that any evidence going to show such agreement is circumstantial. This charge assumes as a fact that there was an agreement to make tracks. It further assumes and instructs the jury that no witness testified directly to that fact, and, third, it informs the jury that the evidence going to show that this agreement was made is circumstantial. The crucial point in the case was for the State to prove this agreement, and unless this was proved under the charge given the State had no case. The prosecution was predicated upon the fact that this agreement was made. This charge assumes that the agreement was made, but the evidence going to prove it was circumstantial. Under all the authorities in this State, where a court assumes a fact and charges upon it, such charge would be upon the weight of evidence. The court is not permitted to single out one fact and charge upon it in cases of circumstantial evidence, and in fact, perhaps in no case unless specially authorized or required by the statute, or under peculiar circumstances not necessary to mention. Parnell v. State, 51 Texas Crim. Rep., 620, 103 S. W., 907; Nelson v. State, 43 Texas Crim. Rep., 553; Barnes v. State, 37 Texas Crim. Rep., 320; Mickey v. State, 49 Texas Crim. Rep., 255; Reese v. State, 44 Texas Crim. Rep., 34. These are sufficient number of cases to show the trend of decisions without collating further authorities.

4. The alleged error of the court overruling the application for continuance will not be discussed as it may not arise upon another trial. The witnesses may be obtained.

5. In regard to the newly discovered evidence set up in motion for a new trial, we would say it is unnecessary to discuss this ground

as the testimony can be utilized upon another trial, and will not then be newly discovered.

For the errors discussed, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*