## WILLIAM BRYAN GOODMAN V. THE STATE.

No. 9928.  Delivered June 16, 1926.

**1.—Manslaughter—Confession of Co-Defendant—Improperly Received.**

Where, on a trial for 'murder, which resulted in a conviction of manslaughter, it was error for the court to permit a witness for the state to detail a confession of appellant's co-defendant, made while under arrest, and not in the presence of appellant. A confession or statement of a co-defendant under arrest, and not in the presence of the accused, is not admissible against the defendant on trial. Following Overstreet v. State, 150 S. W. 1158, and other cases cited.

**2.—Same—Evidence—Silence of Co-Defendant—Not Admissible.**

There was also error in permitting the state witness to testify that the co-defendant refused to tell him what they were doing out at the scene of the killing at 3:45 o'clock in the morning. This testimony was not admissible for any purpose, even against the co-defendant. After the arrest of the defendant the state cannot avail itself of his silence as evidence of guilt, nor as destructive of the explanation of his conduct, and it would certainly follow that the state could not avail itself of the silence of a co-defendant or use it in any manner against the party on trial. Following Brown v. State, 275 S. W. 1069, and numerous other cases cited.

Appeal from Criminal District Court No. 2 of Dallas County. Tried below before the Hon. C. A. Pippen, Judge.

Appeal from a conviction of manslaughter, penalty five years in the penitentiary.

The opinion states the case.

*Maury Hughes* and *T. F. Monroe* of Dallas, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—The offense is manslaughter, and the punishment is five years in the penitentiary.

Appellant in his brief has made a very accurate statement of the salient facts in the case from which we take the following:

The appellant, William Bryan Goodman, was indicted on the 3rd day of July, 1925, for the murder of Charles S. Swinney. One Joe Brown was also indicted for the same offense. The defendant Goodman was first tried and convicted of the offense of manslaughter. The deceased, Charles S. Swinney, was shot on the 21st day of June, 1925, at about 4 o'clock in the morning. Various witnesses testified to hearing a number of shots and also to hearing the deceased call for help. There were no eye witnesses to the shooting. Deceased was found lying on the sidewalk on Knox street, same being a public thoroughfare in the city of Dallas. Deceased made a statement to those present before he was removed to the hospital to the effect that he had a conversation with one of the defendants, a man he did not know. The record shows this man was the defendant Goodman. It also shows that deceased, who was a nightwatchman, stopped the defendant for questioning and a man across the street hollered at him and began to shoot. Deceased said that he fired at the man closest to him, this being Goodman, and in his statement said he thought he had hit him. One witness testified that the deceased said, "They got me." Other witnesses said that the deceased did not say that the man closest to him (this being the defendant) fired at him. Witnesses testified that they heard a car drive off immediately after the shooting and saw two men in it.

Joe Brown was arrested in the city of Dallas on the 27th of June, 1925, and charged with the murder of the deceased Swinney. According to the witness Tipps he confessed to the shooting and stated that he fired at deceased. Goodman was arrested several days later at his home in Haskell, Oklahoma. He made a written and signed statement to the officers at the time of his arrest denying that he shot Swinney and recited the details of the transaction. The statement was introduced in evidence.

The defendant testified in his own behalf to the effect that he was in Dallas on business; that he knew Joe Brown who was raised in the same community with him in Oklahoma; that he was a stranger in town and that on the night of the homicide Brown took him to a dance; that in company with two young ladies they had a midnight supper at the Adolphus Hotel in the city of Dallas and later after a ride took the

young ladies to their homes; that on the way to defendant's boarding house they had a punctured tire; that Brown was fixing the puncture while defendant went to a nearby restaurant a few hundred feet away for cigarettes; that on the way defendant was accosted by deceased, who searched him and accused him of being in the vicinity for an unlawful purpose; that deceased assaulted him with a pistol; that an argument then ensued and that Brown then came up and told the deceased to hold on; that at this juncture the deceased began shooting at defendant; that Brown then began to return the fire and that deceased fell; that he and Brown became frightened and fled. Defendant denied that he was armed or participated in any manner in the shooting.

Many questions are raised by proper bills of exception, but we deem it necessary to discuss only those bills which complain that the court's action in permitting the assistant district attorney to testify to a confession and statement of the co-defendant Brown made to the witness Tipps in the absence of the defendant some six or seven days after the homicide and while the co-defendant Brown was under arrest. The bills of exceptions clearly show that something like a week after the homicide while Brown was in jail and when the appellant was not present, Tipps procured a statement from Brown and the details of this were offered in evidence by the state over the objection of the appellant. Without setting out the details of this statement it is sufficient to say that it was highly material to the state's theory of the case and was very damaging to the theory of the appellant. As illustrative of this, in one portion of said statement Tipps testifies that after talking to Brown for quite a while "he told me if I would come back the next morning at nine o'clock he would not only tell me but would take me and show me, he said he would take me and show me how they killed old man Swinney." He was further permitted to testify that Brown told him that C. M. Moore was the name that Goodman had engaged a room under at 1003 North Haskell Avenue. The statement further shows that Brown told Tipps that both he and the appellant had pistols just alike, both .45 automatics, but the court later excluded this statement about the pistols. Over the objection of the appellant the witness Tipps was permitted to testify to the following: "I asked Joe Brown why he and Goodman were at Knox and Travis streets at 3:45

o'clock Sunday morning. He refused to tell me what they were doing out there, he refused to tell me why they left their automobile two blocks around the corner; he refused to tell me what he was doing out there, said it would involve somebody else."

The above excerpts will clearly indicate that the statements made by Brown to Tipps out of the presence of the appellant were highly material to the state's case. This testimony was not admissible. A confession or statement of a co-defendant under arrest and out of the presence of the accused is not admissible against the defendant on trial. Overstreet v. State, 150 S. W. 630. French v. State, 102 S. W. 1147. Watson v. State, 87 S. W. 1158. Schwen v. State, 35 S. W. 172.

In dicussing the identical question Judge Davidson speaking for the court in the Overstreet case, supra, in effect said:

"Another bill of exception recites that after the arrest of Brazill and defendant, and while in custody—perhaps the next day after their arrest—one of the officers, Mrs. Tilley, had a conversation with Brazill while both parties were under arrest which conversation occurred in the absence of the defendant, in which Brazill made certain statements to him about some silk handkerchiefs, and where they could be found. The officer went to the point designated, which was the home of Brazill—that is, the residence of his mother—and there is, in pursuance to the statement of Brazill, found the handkerchiefs mentioned. Various objections were urged to this testimony, all of which we think were well taken. The conspiracy, if one existed, was shown to have terminated, the entire transaction was at an end, and these goods were found where Brazill said they were, and nowhere defendant admitted they were. The conversation was in the absence of defendant, and of which he had no knowledge; and if Brazill's statement was true these were fruits of the crime, pointed out by one of the conspirators after the termination of the conspiracy and the completion of the entire design. Under all the authorities this testimony is inadmissible."

It is also true that the acts, conduct, statements, declarations or confessions of a co-defendant made in the absence of a defendant are inadmissible against him under the conditions of this case, and the following recent cases are authority for this holding: Howard v. State, 242 S. W. 739; Walker v. State, 242 S. W. 749; Gray v. State, 268 S. W. 941.

The testimony of Tipps to the effect that Brown refused to

tell him what they were doing out in the scene of the killing at 3:45 o'clock in the morning was not admissible for any purpose even against Brown. Many authorities might be cited in support of this proposition but the question is fully discussed in the following recent cases: Brown v. State, 275 S. W. 1069; Johnson v. State, 272 S. W. 783; Brown v. State, 276 S. W. 929; Skirlock v. State, 272 S. W. 782; Ripley v. State, 58 Tex. Crim. Rep. 489; Williams v. State, 277 S. W. 389.

The question of the right of the party under arrest to remain silent is fully discussed in the above cases and the rule is very clearly stated by Judge Hawkins in the case of Brown v. State, supra, as follows: "After the arrest of the defendant the state could not avail itself of his silence as evidence of guilt nor as destructive of the explanation of his conduct."

It would certainly follow that the state could not avail itself of the silence of the co-defendant of an accused as evidence of guilt or as to be used in any other manner against the party on trial.

For the errors above discussed the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.