**1.  Seduction—Evidence.**

On a trial for seduction, the act of sexual intercourse is presumed to have been with the consent of the female; and it is therefore immaterial to prove by her, that she adjusted her person to accommodate and assist the defendant in the act.

**2.  Same—Cross-Examination of Prosecutrix.**

On a trial for seduction, evidence that the first act of copulation produced no pain on the person of the prosecutrix, or laceration of the parts, or blood, was pertinent and legitimate testimony as going to show that she was not a chaste virgin; and, therefore, not the subject of seduction; and it was error for the court to refuse to permit the prosecutrix to be cross-examined as to such matter.

**3.  Bill of Exceptions—Questions and Answers—Practice.**

Where defendant's counsel, on cross-examination, are refused permission to ask the witness certain questions which are legitimate, and the court refuses to permit his bill of exceptions to state the answers expected to be elicited and facts proved, it will be presumed, on appeal, that the answers would have been favorable to the defendant, or such as he expected.

**4.  Seduction—Evidence—Charge.**

On a trial for seduction, where the prosecutrix, on cross-examination, testified, that she was afraid of the defendant, and he promised to marry her; that he never got her full and free consent to the sexual intercourse; that she would not have done it if she had not been afraid of him.  Held: The court should have charged the jury to the effect, that before they would be authorized to convict, they must believe from the evidence, beyond a reasonable doubt, that the prosecutrix relied alone upon the promise of marriage in consenting to the act of carnal intercourse; and that she was not actuated thereto on account of some other consideration, such as fear or lust.

**5.  Same—Promise of Marriage—Essential Element in.**

In seduction, the promise of marriage is the essential element of the statutory offense, and it must appear that the female, alleged to have been seduced, yielded alone to the solicitation of the other party in consideration of his promise to marry her; and the charge of the court should, in effect, so instruct the jury.

**6.  Same—Conditional Promise.**

It is not error to refuse to instruct the jury as to a conditional promise of marriage, where the evidence, as to such promise, consisted in defendant's statement, that he would marry the prosecutrix when he got out of his trouble, viz: a criminal prosecution pending against him in the courts.

**7.  Same—Personal Appearance of Child as Evidence of Paternity—Charge.**

Proof of the personal appearance of a child only three or four months old, the color of its eyes, hair and complexion is not admissible for the purpose of comparison, in order to establish paternity.  But, even if such evidence was admissible and proof had been offered as to the complexion, features, etc., of defendant, it is erroneous for the court to call attention, in the charge, to this particular part of the testimony and authorize the jury to use the same for no other purpose than to show paternity, and thus give it undue weight before the jury.

APPEAL from the Criminal District Court of Dallas.   Tried below before Hon. CHAS. F. CLINT.

Appeal from a conviction for seduction; penalty, three years' imprisonment in the penitentiary.

The matters connected with the questions discussed in the opinion are so fully stated as to need no further illustration from the evidence.

The bill of exceptions as to the evidence of the appearance of the child, was as follows: "Be it remembered, that upon said trial when the State's witnesses, Mrs. L. A. Ford and Mrs. Ball, were upon the stand in the State's case in chief (the defendant introduced no evidence), and the prosecutrix, Anna Hamlet, being recalled, it was proved by each of said witnesses when upon the stand, that the prosecutrix gave birth to a child in July, 1896, and· that said child had red hair, blue eyes and a blonde complexion. And the State furthermore proved by the witness, Mrs. Ball, and the prosecutrix, Anna Hamlet, that she, the said Anna Hamlet, was pregnant and gave birth to this child so above described. The evidence showing that this was a seven month's child, and the only evidence as to the seduction and first act of carnal intercourse was, that it occurred in the last of September or first of October, 1895. The defendant, at the time said testimony was offered, objected to the same, for the reason that it did not prove a single element of the offense of seduction, and furthermore was illegally permitted to corroborate the prosecutrix as to the promise of marriage, the carnal intercourse and the crime of seduction; and furthermore, the color of the child's eyes, hair and its completion were as that of the defendant and thus the jury were illegally to weigh these circumstances against the defendant who was present at his trial in duress as the law demands, though not used as a witness, the jury could look at the defendant in the prisoner's dock, see for themselves; furthermore, it was a seven month's child and the evidence that being it was ten months intervening the seduction and the birth of said child."

*Miller & Williams, Kearby & Muse* and *E. B. Muse*, for appellant. —The prosecutrix, Annie Hamlet, at the instance of the State having testified to repeated sexual intercourse with the defendant in the woods at night from September, 1895, until in March, 1896, he defendant upon cross-examination of said witness sought to prove that she adjusted her person to the acts of coition, that her privates were not rendered sore or bruised by the first or subsequent acts of coition, and that there was no blood upon her person, privates or under garments after the first or subsequent acts of coition, was not permitted by the court to ask said witness any question touching said issue, and the witness was not permitted to answer the questions relating to intercourse upon lust propounded to her. And the court refused to permit defendant to ask the witness the questions or to state in his bill of exceptions the questions desired to be asked or the facts expected to be proved touching said issues, and by remarks made in the presence and hearing of the jury disparaged the defense of the defendant. People v. Clark, Vol. 5 Crim. Defenses, pp. 776, 780, 768; Oliver v. Commonwealth, Vol. 5 Crim. Defenses, p. 735.

The defendant on cross-examination of the prosecutrix, Annie Hamlet, asked her if she ever went walking with one Drew, or go out in the brush with him. Said witness answered, no.

The court here interposed with the remarks, in the presence and hear-

ing of the jury, such questions throw no light on the case; she had the right to walk in the brush with men, receive visits, etc. That no more questions of that character will be permitted, which merely insinuated against this witness. That it was unfair to ask such questions, to reflect on witness and insinuate against her. The defendant excepted to the ruling and remarks of the court as upon the weight of the evidence, and as evincing the opinion of the court in the truth of the answer and the chastity of the prosecutrix prior to the alleged seduction. Andre v. State, 5 Crim. Defenses, page 748; Rice v. Commonwealth, 5 Crim. Defenses, pages 762-3.

The court erred in permitting State's counsel, over the objection of the defendant, to ask the prosecutrix, Annie Hamlet, leading suggestive and improper questions upon redirect examination, relative to why she had intercourse with defendant, after direct and cross-examination of the witness. To all of which questions and answers, exception was reserved.

The court qualifies the bill with this statement, viz.: "Please see the examination in chief of the witness as to how she came to submit to defendant." Appellant suggests that the evidence adduced upon cross-examination is of equal dignity, and of more probative weight in the ascertainment of the truth, and therefrom, and the redirect examination, a case of rape or "lust" reaches nearer the truth than seduction

The court erred, over the objection of the defendant, in permitting the State to prove that the baby of prosecutrix was born in July, 1896, was a seven-months child, and was a blonde, blue-eyed, red-headed baby. The defendant objected thereto because not competent to prove seduction, and illegally corroborative of the witness upon promise of marriage and seduction occurring in September, 1895. And the court erred in permitting the baby to be exhibited to the jury, over objection of the defendant.

The court erred in charging the jury, over exception thereto at the time, that the evidence of pregnancy, child birth, color of child's eyes, hair and complexion was admitted to aid in determining whether or not defendant had carnal intercourse of Annie Hamlet, and not to consider such evidence for any other purpose.

The court erred in instructing the jury that to constitute seduction three things among others must be established, and omitting to state and define what "other things" besides the three named in the charge was necessary to constitute seduction, and left such "other things" to the speculation of the jury.

And erred in the application of the law to the case in omitting to charge there or elsewhere that to constitute seduction, that the female must consent to the carnal intercourse in reliance solely and alone upon the promise of marriage. Cole v. State, 40 Texas, 147.

The court erred in failing to charge the jury, over exception, that if the prosecutrix consented to carnal intercourse with the defendant through fear of violence or partly from fear, partly from love and partly

from promise of marriage that the same did not constitute seduction, and to acquit.

The court erred in failing to charge the jury over exception that if the prosecutrix consented to carnal intercourse induced by lust, that a promise of marriage would not constitute seduction.

That if carnal intercourse was had upon a conditional promise of marriage that the same did not constitute seduction at any rate until the happening of the condition precedent.

The evidence showing repeated acts of coition, the court erred over exception in failing to instruct the jury that subsequent acts of carnal intercourse could be considered only in determining whether it was seduction in the first act.

The court erred in its charge on corroboration, and erroneously failed to charge that the prosecutrix could not corroborate herself, and that corroboration of her upon immaterial matters was insufficient.

The court erred in overruling the defendant's motion for new trial: (1) Because the evidence disclosed that the prosecutrix had relied upon a conditional promise of marriage. (2) That she consented through fear of personal violence. (3) That she consented partly from love, partly from fear and partly from promise of marriage, which was condition. l in that, the promise was predicated upon the happening of conditions, namely, after he should have had his trial, after he should have gotten out of his trouble, neither of which was shown to have ever occurred.

*Mann Trice,* Assistant Attorney-General, for the State.—The evidence amply sustains the conclusion that the appellant had intercourse with Anna Hamlet. Then the question arises, did she yield to him by virtue of his promise of marriage, or was lust or fear the moving cause. The evidence scarcely raises the question of lust, though in view of the circumstance, the court summitted the issue. On the question as to the moving cause for her submission, the prosecutrix said, "I submitted my person to him. He had intercourse with me. The promise of marriage induced me to do it." Appellant sought to show on cross-examination that she yielded partly through fear and lust instead of her reliance on his promise of marriage. She said, "I submitted partly through the promise of marriage, and partly through fear. I would not have submitted to him had it not been for the promise of marriage. I submitted to him because he promised to marry me." While other elements may have been incidentally considered in connection with her act of criminal intercourse with the appellant, it is apparent that the promise of marriage was the moving cause. If so, the offense is complete. Bailey v. State, 36 Tex. Crim. Rep., 540; Armstrong v. People, 70 N. Y., 78.

Appellant complains of the action of the court in eliminating a portion of his special instructions, and in refusing to charge that carnal in tercourse based upon the conditional promise was not sufficient to predicate a prosecution for seduction. In this connection it will be observed

that the court instructed the jury, "If you find that Anna Hamlet submitted to carnal intercourse with the defendant; that she was moved to such intercourse by fear or lust, you will acquit the defendant." This charge presented all of the law applicable to this phase of the case; and the facts did not call for the special instructions in regard to the conditional promise. There is nothing unlawful or contrary to public policy attached to the alleged condition; moreover, there is no evidence showing that there was anything said about any condition as to the marriage taking place after he got out of his trouble, until long after the original engagement and after the first act of carnal intercourse—it was then this matter was mentioned. It will hardly be contended that he could then engraft conditions upon the original promise before mentioned and understood by both parties. But if it should be conceded that this was part of the original transaction, appellant by his own act rendered the performance of his contract impossible by marriage with another woman before the happening of the condition, to-wit: trial and acquittal of the charges pending against him.

Again, if it be conceded (which is not the case) that the condition formed a part of and entered into the original promise, as before stated, there is nothing unlawful or contrary to public policy entering into the conditions named, therefore she could rely upon a promise made in reference thereto.

The promise of marriage under the statute need not be technically valid. The offense consists in seducing and having illicit intercourse with an unmarried female, under promise of marriage, whether the promise be valid or not. Kenyon v. People, 26 N. Y., 203; Whart. Crim. Law, 10th Ed., Vol. 2, 1758; Callahan v. State, 63 Ind., 199; People v. Hustis, 36 Hun., 58; People v. Van Alstyne, 78 Hun., 509; People v. Durgea, 81 Hun., 390; Bishop on Stat. Crimes, 639.

The promise is in the nature of a deceit, as stated by Lord Mansfield, "The parties were not in pari delicto, but this was a cheat on the part of the man." Morten v. Fenn, 3 Doug., 211. This cheat is what the statute proposes to inhibit and punish. Under all of the authorities it matters not whether the promise was conditional or unconditional, it is sufficient that the female relied on the promise to be fulfilled and unless the fulfillment of the condition involves the doing of an unlawful act, contrary to public policy, etc., there is no inhibition against a reliance on the promise to be executed on happening of such lawful conditions. No unlawful elements enter into the conditions contended for by appellant in this case.

The Supreme Court of Indiana, in passing upon a similar case, uses the following language: "There is nothing in the statute that requires the promise of marriage to be free from all legal objections, viewed as the foundation of an action for its breach. Its purpose was to prevent the obtaining of the female's consent to protect her from the arts of designing and unprincipled men, in whom she may repose trust and confidence, and to whose solicitations she may yield, believing that their

promises of marriage are made in good faith, and will be fulfilled. It is not to be supposed that she will pause to consider, even if she were capable of judging, whether the promise is valid in law, and one on which she could maintain an action if broken. It is not to be assumed in such case, that her consent to the intercourse is given in consequence of her reliance upon an action upon the promise for damages, in case of its breach; but it may be given upon the confidence she places in the good faith of the promise, believing, not that it will be broken, but fulfilled. We are supported in these views by the decisions of the Court of Appeals of New York." See, Callahan v. State, 63 Ind., 204.

2. There was no error in permitting the witness, Anna Hamlet, prosecutrix, to exhibit her child, the result of the intercourse with the defendant, to the jury. In the case of Snodgrass v. State, 36 Tex. Crim. Rep., 207, the prosecutrix was there permitted to state that the defendant was the father of the child she held in her arms while testifying. See, Horton's case, 100 N. Car., 143.

3. It was the duty of the trial court to protect the prosecutrix, or any other witness in the case, from insult, humiliation, shame or public ridicule, by refusing to permit her to answer the immaterial, irrelevant and impertinent questions set forth in appellant's fifth bill of exceptions. The testimony sought to be elicited was not material to any issue in the case. That she assisted in the act of coition and adjusted her limbs to be free from pain is but natural. This prosecution is not predicated upon the idea of force being used in the act of coition, but is based upon the consent and willingness in reliance upon the promise of marriage, and therefore presupposes consent. Whar. Crim. Law, Sec. 1768, et seq. The condition of her private parts as to whether bruised, lacerated or not, is not a legitimate inquiry. The inquiry might be proper in certain cases of rape, but not in a case of this character. It may be contended, however, that the condition of her person became material in determining the question of her previous chastity, if so, the bill fails to so state, or to show what the witness would have answered. This is made necessary, when the exception goes to the exclusion of evidence, and unless the bill discloses the rejected evidence, and further shows its relevancy and materiality, this court has uniformly refused to consider the same. The bill does not state any fact that could have been elicited from said witness, but simply recites that appellant "desired to ask said witness," and "desired to prove," etc., without stating what he could prove. Appellant may have had many desires at that time, but it is hardly probable that this court will reverse the judgment because of the refusal of the trial court to permit him to indulge or gratify every curious desire entertained. This bill only shows a desire on the part of counsel to propound questions and inquire about matters having no relevancy whatever to any issue in the cause, and the court very properly checked the inquiry upon these lines.

DAVIDSON, JUDGE.—Appellant was convicted of seduction, and his punishment assessed at confinement in the penitentiary for three years; hence this appeal. On cross-examination of the prosecutrix, the defendant offered to prove that, in the act of intercourse between herself and defendant on the occasion of her seduction, she adjusted her person in order to accommodate and assist defendant in said act of intercourse; and also desired further to prove by said witness that in this first act of intercourse her private parts were not bruised or injured, and that she was not rendered sore or stiff, or in any wise discomforted physically, by any injury or soreness from said first act of intercourse; and questions for the purpose of eliciting said testimony were propounded to said witness by defendant's counsel. The bill of exceptions shows, that, to the first question above asked, the court stopped defendant's counsel, and stated he would not permit further inquiry as to the position of the parties, and would not permit the witness to answer. Thereupon the other questions were asked said witness by defendant's counsel, and the court refused to permit the witness to answer or defendant's counsel to state what was expected to be elicited thereby or proved by the witness in answer thereto; and the court refused to permit any further questions to be asked said witness touching said issues and matters desired to be proved as aforesaid. The defendant then stated that he had other questions that he desired to ask said witness relating to the same matter. The court, in reply, stated: "The court declines to permit you to ask questions of that kind." The defendant then asked the court if he would be permitted to state in his bill of exceptions the questions he desired to ask, and what he expected to prove; and the court stated that he did not think the questions or answers on that subject had anything to do with the case, and would not permit further questions to be stated in the bill, nor anything further about the matter, touching said issue. Defendant reserved his exceptions to the remarks of the court in the presence and hearing of the jury, and the rulings and action of the court above referred to were also excepted to. Defendant insisted that said matters were pertinent to the issues involved in this case, to show that said act of intercourse was upon lust on the part of the prosecutrix, and as tending to show that the prosecutrix was not virtuous and chaste at the time of the alleged seduction. In the court's approval of this bill, reference is made to the whole examination of the witness on the matters involved in this bill. We have examined the testimony of said witness carefully, and fail to find any testimony of the prosecutrix regarding the adjustment of her person so as to respond to the defendant in the act of intercourse, and fail to find any testimony on her part in regard to whether her parts were injured or made to bleed, or that she was hurt or suffered pain in the act of copulation. With regard to that portion of the testimony desired to be elicited from her as to the adjustment of her person, dress, etc., we see no error in the action of the court as to this matter. The act of seduction apprehends consent on the part of the female, and

that she adjusted her person in response to the desires of defendant would be in harmony with seduction, and the testimony on this point was absolutely immaterial. However, the defendant also proposed to ask the witness the question above referred to, as to whether her parts were bruised or rendered sore by said act of sexual intercourse, and if there was any blood on her person, etc., and the court refused to permit the witness to answer said question, or allow defendant's counsel to state what was expected to be elicited thereby, or proved by the witness in answer thereto. It occurs to us that this is a most extraordinary proceeding. If such a course is authorized, it would be impossible for defendant to conduct his case in accordance with the well-recognized rules of procedure in this regard. The question was pertinent and legitimate; that is, if it was intended to be shown by the defendant, in asking said question, that no pain was inflicted on the person of the prosecutrix, and that by reason of said act of intercourse no laceration was produced or blood ensued. In the first act of copulation between a virgin and an adult male person, these are the natural and ordinary results. While they may not attend every case, yet such cases are exceptional, and not the rule; and proof that such was not the case in this instance was legitimate testimony, as going to show that she was not a chaste virgin, as she asserted in her testimony, and so was not the subject of seduction. But as stated, we are not informed that this was the character of proof that the defendant proposed to elicit from this witness. His statement of the nature of the testimony that would be drawn out in this cross-examination was forestalled by the action of the court. He was not permitted even to state what he expected to prove. The question being calculated to elicit an answer which might have been favorable to the defendant, we will presume, when he was denied all right to state the object or the expected answer, that he expected to prove by said witness in the cross-examination that her parts were not lacerated or bruised, and that there was no blood on her person, privates, or undergarments, produced by this first act of copulation. Upon cross-examination, prosecutrix, Annie Hamlet, testified "that on the first occasion in which he had carnal knowledge of me the weather was warm. He moved my dress out of the way. He laid me down on the grass. He took hold of me, and I remonstrated with him. I was afraid of him, and he promised to marry me. He never did get my full and free consent. I would not have done it, had I not been afraid of him." On re-examination of this witness, over the objection of counsel for defendant, the County Attorney asked these questions: "You submitted to him, because he promised to marry you? You state that because you loved him, and because he promised to marry you, and because you were afraid of him?" The witness answered all of these questions: "Yes, sir; and because I was afraid of him, and would not have yielded but for the promise of marriage, and because I was afraid of him." Her testimony upon cross-examination eliminated from this case the crime of seduction. It was a crushing blow to the prosecution. Now, in at-

tempting to reinstate the case before the jury, these leading questions were permitted to be asked. Counsel for appellant objected because they were leading. The court should have sustained the objection. The witness, however, never did so qualify her testimony as to eliminate fear from the case. On this phase of the case, as presented by the examination of the prosecutrix as above shown, appellant requested the court to give the following special instructions, to-wit: "If you find that Annie Hamlet submitted to carnal intercourse with the defendant, and that she was moved to such intercourse by fear or lust, or conditional promise of marriage, you will acquit, as the female charged to be seduced must rely alone upon an absolute promise of marriage, and be induced by that and in reliance thereon alone." The court eliminated a portion of said requested charge by marking a part thereof with his pen, leaving the charge reading as follows: "If you find that Annie Hamlet submitted to carnal intercourse with the defendant, and that she was moved to such intercourse by fear or lust, you will acquit." As to the conditional promise ·of marriage imputed in said requested charge, we do not believe there is anything in the record to raise this issue. An examination thereof will rather suggest that the condition stated, that he would marry her when he got out of his trouble (alluding to a criminal matter then pending against him in the courts and his pending trial therefor), was stated by the prosecutrix rather as setting the time when their engagement should be fulfilled and the marriage take place than otherwise. We do not take it from her testimony that this condition was stated or entered into the original promise. Even if it had been, such a condition stated would be reasonable, and would not render the promise void, and his marriage with another would put it out of his power to consummate an engagement entered into by him. But we do believe, under the peculiar facts and circumstances of this case, that appellant had a right to have the court give, in some shape, the substance of his special charge to the effect that, before the jury would be authorized to convict, they must believe from the evidence beyond a reasonable doubt, that the prosecutrix relied alone upon the promise of marriage in consenting to the act of carnal intercourse, and that she was not actuated thereto on account of some other consideration, such as fear or lust. While the court told the jury in its general charge that they must believe that Annie Hamlet was induced to agree to the act of carnal intercourse with the defendant upon his promise to marry her; and while the court gave a portion of said special charge to the effect that if they believed she was moved to such intercourse by fear or lust they would acquit the defendant, yet the jury were nowhere told that she must have yielded alone upon the promise of marriage, and they were nowhere told that if she was moved to such intercourse partly by a promise of marriage and partly by fear or lust they would acquit. The evidence, as above stated, brought this question directly to the attention of the court, and was the real issue in the case; and the special charge asked, or one embody-

ing the essential features thereof, should have been given to the jury; the rule being, in the language of Judge Moore, as stated in Cole v. State, 40 Texas, 147: "The promise of marriage is the important element in the definition of the statutory offense, and it must appear that the female alleged to have been seduced yielded alone to the solicitation of the other party in consideration of his promise to marry her." See, also, State v. Lewis, 48 Iowa, 578. The court gave the following charge to the jury, which is assigned as error: "The evidence, if any, of the pregnancy of Annie Hamlet, and of the child, birth, color of the child's eyes, hair and complexion, was only permitted to go before you to aid in determining whether or not defendant had carnal knowledge of Annie Hamlet; and you will not consider such evidence for any other purpose." Appellant insists that this charge was upon the weight of the evidence, and singled out this fact, and gave it an undue weight, as to the fatherhood of the child by the defendant, which must have resulted from carnal intercourse between the prosecutrix and the defendant, etc. And, furthermore, under such charge, the jury were authorized to consider such evidence, and from their observation of the defendant and his personal appearance determine the paternity of the child, and the effect of said charge was to so instruct the jury, and to authorize them to compare the features of the child with defendant then on trial, no evidence of his personal appearance being introduced. The authorities differ as to whether proof of this character can be made as a circumstance to show the paternity of the child. See, 21 Amer. and Eng. Ency. of Law, p. 1033. In this case, however, no proof was made as to the features, complexion, color of hair or eyes, etc., of the defendant on trial, and whatever benefit the jury might derive from an observation of the defendant is not brought into the record. We are of opinion that such proof, as in this case, of a child only three or four months old, is not admissible for the purpose of comparison in order to establish paternity. Even if it were admissible, and proof had been offered as to the complexion, features, etc., of the defendant, the charge of the court was erroneous, in calling attention to a particular part of the testimony that could be used by the jury for no other purpose than to show paternity, and thus give it undue weight with the jury. There are other assignments in the record, but we do not deem it necessary to discuss them. For the errors discussed the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*