PEOPLE OF PORTO RICO, Plaintiff and Appellant, *v.* CÁNDIDO MARTÍNEZ, Defendant and Appellee.

No. 2874. Argued March 10, 1927.—Decided July 22, 1927.

*José E. Figueras* and *Benjamín Guerra Mondragón* for the appellant. *Carlos Travecier* and *R. Cuevas Zequeira* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

We are presented with the interpretation to be given to the word "unmarried" in section 261 of the Penal Code which provides:

"Sec. 261. Every person who, under promise of marriage seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment in the penitentiary for not more than five years, or by a fine of not more than five thousand dollars, or by both such fine and imprisonment."

This statute came to us indirectly from California which apparently took the same from the State of New York. The statute was adopted in Porto Rico in 1902 and although the Spanish version was passed at the same time, primarily if there is any real conflict between the two versions, under recognized rules of construction the English text should prevail.

The information set up that Cándido A. Martínez, at Caguas, within the Judicial District of Humacao, illegally seduced under promise of marriage Elsie Márquez, a female not married (*mujer no casada*), that is to say, divorced, of previous chaste character, having sexual intercourse with her. The defendant demurred to the information and the District Court of Humacao sustained the demurrer.

There has been a great deal of discussion in the books as to whether a divorced woman or widow was of previous chaste character, as the word "chaste" is used in the statute, but we apprehend that the better opinion is that such a woman must be considered as having a previous chaste character. We have so decided in *People* v. *Santos,* 8 P.R. R. 348, and in *People* v. *Millán,* 27 P.R.R. 787.

Nevertheless, numerous courts have decided to the contrary. In *Bray* v. *United States,* 39 Appeal Cases District of Columbia, 607, in an opinion rendered by Mr. Justice Shepard the court says:

"The first exception to the charge of the court to what is meant by 'previous chaste character.' The court gave an instruction to the effect that what is meant is actual physical chastity. The contention of the defendant is that it means moral chastity, a chastity of mind and thought. By the great weight of authority in the construction of similar statutes, virginity is made the test. This con-

stitutes a direct and certain test, whereas the test of moral or mental chastity is metaphysical, speculative, and impracticable.''

The court then cites cases from Minnesota, Indiana, California, Virginia, North Carolina, Georgia, Mississippi, Missouri and New York.

The appellee also cites a case from Texas as tending in the same direction. *Barnes* v. *State*, 37 Tex. App. 320, 39 S. W. 684.

While we have no intention of abandoning the jurisprudence set forth in the cases of this court, the attitude of various courts in insisting upon the proof of virginity will be shown to have some bearing on the interpretation to be given to the word ''unmarried.'' With respect to the meaning of the word ''unmarried'' standing alone, counsel for both sides have practically exhausted the jurisprudence. Although there are some indications to the contrary, it is practically conceded that the word ''unmarried'' in its ordinary use means a person who has never married. In 38 Cyc. 837, we find the following: ''In its original and ordinary meaning, never having been married.'' Cases from Illinois, Virginia, New Jersey and England and Canada are cited in the notes. In *Kirk* v. *Long*, 7 U.C.C.P. 363, 365 (Canada), cited in Cyc., it was said that ''the term 'unmarried female' obviously means female unwedded, or in a state of celibacy, and it is inapplicable to female who has been married and divorced.'' In a note to *Bradshaw* v. *Jones*, 76 A.S.R. 655, *Kirk* v. *Long, supra,* is mentioned and *Anderson* v. *Rannie*, 12 U.C.C.P. 536, the latter to the effect that a widow is not within the statute. In the note to *State* v. *Wallace*, L.R.A. 1916-D, 459, in addition to *Kirk* v. *Long, supra,* the case *Cambridge* v. *Sutherland* (1914), 20 D.L.R. 832 (Canada), a widow might not bring an action for own seduction under a statute giving the right to an unmarried female. In the case of *Jennings* v. *Commonwealth*, 21 L.R.A. (N. S.), 265, it was said: ''It is conceded that, in its ordinary and

primary sense the word 'unmarried' means 'never having married.'" This primary meaning is conceded in *People* v. *Weinstock, supra,* analized later in this memorandum. Words and Phrases Judicially Defined assembles some of the cases and the generality of the citations is that the ordinary and primary meaning of the word is "Never having married," although slight circumstances may give the word its other meaning of not having a husband or wife at the time. Webster's International Dictionary does not directly give the word except to say "See 'un' meaning 'not married.'" The Century Dictionary says "not married, single. Commonly the word implies that the person to whom it is applied has never been married; but it may be used of a widow or widower and possibly of a divorced person." The old American & English Encyclopaedia of Law says: "The term frequently occurs in deeds of trust and wills and has been the subject of judicial construction. Its primary meaning is, never having been married. But the term is a word of flexible meaning and slight circumstances no doubt will be sufficient to give the word its other meaning of 'not having a husband or wife at the time in question.'" The same language is to be found in the 2nd Edition of the American & English Encyclopaedia of Law. Under these authorities, mostly in civil cases, it is generally held that a widow or a divorced woman is not included within the meaning of the word "unmarried." Very slight circumstances may serve to cause the courts to include under the definition of "unmarried" widows and divorced women. This has frequently happened where a man leaves property to his unmarried daughters or his unmarried sisters.

In the field of penal statutes the decisions are not numerous. The earliest case was *Jennings* v. *Commonwealth,* 21 L.R.A. (N. S.) 265. There it was clearly held that the word "unmarried" did not apply to a divorced woman. To the contrary are *People* v. *Weinstock,* 140 N. Y. Sup. 453;

*State* v. *Wallace* (Ore.), 154 Pac. 430, L.R.A. 1916-D 457; *State* v. *Eddy,* 167 N. W. 392.

Reading the *Jennings Case, supra,* we should say that somewhat involved in the *ratio decidendi* is the idea that the woman seduced should be a virgin. On the other hand while the *Wallace Case* attempts to distinguish the *Jennings Case,* its reasoning is based upon the probable beneficient intent of the statute. The meaning of the word is not discussed. Similarly the case of *State* v. *Eddy, supra,* which cites the *Weinstock Case,* does not discuss the meaning. California would probably decide as did Virginia, inasmuch as it has the same idea of the *virgo intacta.* The reasoning of none of these decisions fully satisfies us, nor does the case of *People* v. *Weinstock.* We agree with the judge who wrote the opinion in *People* v. *Weinstock* that criminal statutes should not be too strictly interpreted. Nevertheless, ever since the decision in *United States* v. *Wiltberger,* 5 Wheaton, 76, and before, the idea is that a criminal statute should have a strict interpretation. In that case Mr. Chief Justice Marshal said:

". . . The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially, in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say 'so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated."

In *People* v. *Nelson,* 153 N. Y. 90, 60 A.S.R. 592, 46 N. E. 1040, which was a case of seduction under promise of marriage, the court said that penal statutes must be strictly construed and cannot be extended to cases not clearly covered

thereby. This case is significant because it was cited in *People* v. *Weinstock, supra.* We may, although the judge in the *Weinstock Case* does not seem to be aware of the force of the *Nelson Case,* base our decision squarely on the ground that as the ordinary meaning of the word "unmarried" did not include widows and divorced women, a defendant is entitled to any benefit that would arise by the failure of the Legislature to make its language more definite. The mischief to be reached should not play any great role unless the intention of the statute is plain.

This might also be said to be the principal reasoning of the *Jennings Case, supra.* People v. *Weinstock* has been greatly relied upon by the appellant. It is not an opinion of any appellate court, to say nothing of the court of last resort of the State of New York. The court reviews a large number of authorities and shows decisions in New York and otherwise where the word "unmarried" has been extended to widows, and then says:

"The Appellate Division, Supreme Court, in Matter of Oakley, 67 App. Div. 493, etc., in discussing the case of Dalrymply v. Hall, 16 Ch. Div. 717, quoted a headnote from that case that, *in the absence of context,* showing a contrary intention, the word 'unmarried' must be construed according to its original and primary meaning as 'never having been married,' and therefore that the gift to the children of B. did not take effect; he being a widower. That case, however, is equally an authority for holding that, where the context does show a different intention, the word 'unmarried' should not be defined as 'never having been married.' "

We have read the case of *People* v. *Weinstock* very carefully and do not see what there was in the New York statute which induced Judge Freschi to find any words in the context which extended the original primary meaning of the word "unmarried." The New York statute is almost word for word the same as the Porto Rican statute. Let us suppose, however, that cases like *United States* v. *Wiltberger* had never been decided and that we were merely presented with

the fact that various courts had differently interpreted the meaning of the word "unmarried." Then we should be presented with a case of a word ambiguously used in the statute. Have we any means to determine what the Legislature meant by using the words "unmarried female"?

Sections 58 and 59 of the Code of Civil Procedure provide:

"Section 58. An unmarried female may prosecute, as plaintiff, an action for her own seduction, and may recover therein such damages, pecuniary or exemplary, as are assessed in her favor.

"Section 59. A father, or in case of his death or desertion of his family, the mother, may prosecute as plaintiff for the seduction of a daughter, under the age of majority at the time of the seduction, and the guardian for the seduction of a ward, under the age of majority at the time of the seduction, though the daughter or ward be not living with or in the service of the plaintiff at the time of the seduction or afterwards, and there be no loss of service."

Section 59 gives some indication that the Legislature was thinking of women who had never married in cases of seduction.

More important than this, however, is the matter of contemporaneous construction as expressed by the maxims, *Optima est legum interpres consuetudo,* 25 R.C.L. 1042; *Contemporanea expositio est optima et fortissima in lege,* 12 C. J. 1313. Whenever the words "unmarried female" have been used in the codes of Porto Rico they have been invariably translated as *"mujer soltera."* This is true not only of section 261 under discussion, but of section 260. Of course section 260 is specifically speaking of persons under 21 years of age. The section relates to anyone who inveigles or entices any unmarried female into any house of ill fame, etc. No one would contend, we apprehend, that this statute should be applied to widows and divorced women under the age of 21 years. Section 58 of the Code of Civil Procedure quoted above has been similarly translated.

In Porto Rico in 1902 or in 1904 when these statutes were passed the Legislature was composed of at least one house

where the proceedings were entirely in Spanish. When the bill proposed to be adopted was presented to them they found only the word *"soltera"* therein and the minds of at least a large part of the legislators were fixed on the said word *"soltera."* We have not, like Louisiana now has, a statute making English the legal language, nor did we have at the time the statutes were passed.

The appellee has also presented us an amendment to section 250 of the Code of Criminal Procedure passed in 1909, which provides:

*"Art. 250.—En juicio por el delito de promover o intentar la promoción de un aborto, o por contribuir o ayudar en su perpetración, por seducir con engaño, corromper por medio de halago o apoderarse de una mujer soltera, menor de veinte y cinco años, hasta entonces reputada por casta, con objeto de prostituirla, o contribuir y ayudar ese fin, o en juicio por el delito de seducción bajo promesa de matrimonio, o por violación, el acusado no podrá ser declarado convicto por la declaración de la mujer agraviada, a menos que su declaración se corrobore con otras pruebas."*

This was an amendment introduced in Spanish and shows the legislative understanding.

*People* v. *Martínez,* 13 P.R.R. 241, was a case of seduction under promise of marriage. In the course of the opinion, affirming the judgment of the court below, this court, through Mr. Justice McLeary, said:

"As far as concerns the proposition designated by the letter 'D' we may say that all women are born single and the law presumes that a status once established continues until there is some proof presented of a change therein. Then if the injured female was married it devolved on the defendant to prove the fact. (Principle not followed in a later case). But all the circumstances go to prove the singleness of the injured woman."

"Singleness" is a word inconsistent with the idea of a married or divorced woman. This opinion gives also some indication of the construction to be put upon the language used.

*Cohens* v. *Virginia,* 6 Wheaton 264, is a case which laid stress on contemporaneous construction. We have, however, been impressed by the language of the Supreme Court of Pennsylvania in the case of *Commonwealth* v. *Paine,* 207 Pa. State, 245, 56 Atl. 317. The court said:

" . . . But in cases of doubtful legislation, either because of ambiguity of expression in a single act or because of obscurity or inconsistency arising from several acts on the same subject, contemporary interpretation is always significant as to the true meaning. If, in the opinion of lawyers and the people interested who lived at the time and were closely affected by the legislation, it had a particular meaning out of several possible ones, courts in later years will be slow to adopt another, even though they might not, on a perusal of the acts, be inclined to concur in the contemporary interpretation."

We made reference to the fact that a number of courts have interpreted the words "previous chaste character" as meaning a *virgo intacta.* Now, while we propose to adhere to our decisions that a reformed woman or a prostitute might be seduced under promise of marriage, yet, as in a number of the states the words "previous chaste character" would necessarily exclude widows and divorced women, a statute which uses the words "unmarried female" without more would generally be understood as not including such widows or divorced women.

If we had before us solely a statute enacted in the English language we might have greater doubts, but given what we might say the legislative acceptance of the word *"soltera"* in the translation of "unmarried" we do not think the judgment of the court below should be disturbed and it will be affirmed.

Mr. Justice Hutchison concurred in the judgment.