El Pueblo de Puerto Rico, demandante y apelante, v. Cándido Martínez, acusado y apelado.

No. 2874.—*Visto:* Marzo 10, 1927. *Resuelto:* Julio 22, 1927.

1. SEDUCCIÓN—RESPONSABILIDAD CRIMINAL—DE LA EVIDENCIA—CARÁCTER DE LA PERJUDICADA.—Una mujer divorciada o viuda debe considerarse como de previo carácter casto a los efectos del artículo 261 del Código Penal.

2. SEDUCCIÓN—RESPONSABILIDAD CRIMINAL—PRECEPTOS ESTATUTORIOS—INTERPRETACIÓN.—Las palabras *"unmarried female"* usadas en el artículo 261 del Código Penal y traducidas como "soltera", no son aplicables a una mujer divorciada o a una viuda.

3. SEDUCCIÓN—RESPONSABILIDAD CRIMINAL—PRECEPTOS ESTATUTORIOS—INTERPRETACIÓN.—Traducidas las palabras *"unmarried female"* en los Códigos de Puerto Rico siempre como "soltera", que equivale a la palabra *"single"* en inglés, habiéndose aceptado, aparentemente, tal traducción por la Legislatura, y habiendo usado ésta independientemente la palabra "soltera" en una enmienda a la sección 261 del Código Penal, surge una interpretación contemporánea la que es siempre favorecida por la ley.

SENTENCIA de *Gabriel Castejón*, J. (Humacao), ordenando el archivo y sobreseimiento del caso a virtud de excepción perentoria aducida contra la acusación. *Confirmada.*

*José E. Figueras* y *Benjamín Guerra Mondragón*, abogados de *El Pueblo*, apelante; *Carlos Travecier* y *R. Cuevas Zequeira*, abogados del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Tenemos ante nuestra consideración la interpretación que debe dársele a la palabra *"unmarried"*, según aparece en el artículo 261 del Código Penal, y que dispone lo siguiente:

"Art. 261. Toda persona que bajo promesa de matrimonio, sedujere a una mujer soltera, hasta entonces reputada por pura, y tuviere comercio carnal con ella, incurrirá en pena de presidio por un término máximo de cinco años, o multa máxima de cinco mil dollars, o en ambas penas, a discreción del tribunal."

Y en inglés es como sigue:

"Section 261. Every person who, under promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment in the penitentiary for not more than five years, or by a fine of not more than five thousand dollars, or by both such fine and imprisonment."

Este artículo vino hasta nosotros indirectamente de California, Estado que aparentemente lo tomó de Nueva York. El mismo fué adoptado en Puerto Rico en 1902 y aunque la versión española fué aprobada al mismo tiempo, de conformidad con las conocidas reglas de interpretación si hay algún conflicto entre las dos versiones debe prevalecer el texto inglés.

En la acusación se decía que Cándido A. Martínez, en la ciudad de Caguas, que forma parte del Distrito Judicial de Humacao, ilegalmente sedujo bajo promesa de matrimonio a Elsie Márquez, una mujer no casada, o sea, divorciada, de previo carácter casto, teniendo con ella actos carnales. El acusado presentó una excepción perentoria a la acusación, que fué declarada con lugar por la Corte de Distrito de Humacao.

[1] Ha habido muchas discusiones en los libros respecto a si una divorciada o una viuda eran de previo carácter casto, según la palabra "casto" se usa en el estatuto, pero entendemos que la mejor opinión es que una mujer en tal estado debe considerarse como que es de previo carácter casto. Así lo hemos resuelto en los casos de *El Pueblo* v. *Santos,* 8 D.P.R. 366, y *El Pueblo* v. *Millán,* 27 D.P.R. 862.

No obstante, numerosas cortes han resuelto lo contrario. En el caso de *Bray* v. *United States,* 39 Appeal Cases District of Columbia 607, en opinión emitida por el Juez Sr. Shepard, la corte dijo:

"La primera excepción tomada se refiere a la instrucción dada por la corte respecto a lo que significa 'previo carácter casto.' La corte instruyó al jurado al efecto de que lo que se quiere decir es castidad física de hecho. La contención del acusado es que significa castidad moral, castidad de mente y de pensamiento. Por el gran peso de las autoridades en la interpretación de estatutos similares, la virginidad es la piedra de toque. Esto constituye una norma (*test*) directa y segura, mientras que la prueba de castidad moral o mental es metafísica, especulativa e impracticable."

La corte entonces cita casos de Minnesota, Indiana, Ca-

lifornia, Virginia, Carolina del Norte, Georgia, Mississippi, Missouri y Nueva York.

El apelado también cita un caso de Texas como que se inclina hacia la misma dirección. *Barnes v. State,* 37 Tex. App. 320, 39 S.W. 684.

[2, 3] Aunque no tenemos la intención de abandonar la jurisprudencia sentada por los casos de esta corte, se demostrará que la actitud adoptada por varias cortes al insistir en la prueba de virginidad tiene alguna relación con la interpretación que se le debe dar a la palabra *"unmarried."* Con respecto al significado de la palabra *"unmarried"* por sí sola, los abogados de ambas partes prácticamente han agotado la jurisprudencia. Aunque hay algunos indicios de lo contrario, se admite prácticamente que la palabra *"unmarried"* en su uso corriente significa una persona que nunca ha contraído matrimonio.

En la página 837 del tomo 39 de Cyc encontramos lo siguiente: "En su significado original y ordinario, que nunca ha contraído matrimonio." En las notas se citan casos de Illinois, Virginia, Nueva Jersey e Inglaterra y Canadá. En el caso de *Kirk v. Long,* 7 U.C.C.P. 363, 365 (Canadá), citado en Cyc, se dijo que "el término *unmarried female* significa claramente una mujer que no ha contraído matrimonio, o en estado de soltería, y no es aplicable a una mujer que ha estado casada y se ha divorciado." En una nota al caso de *Bradshaw v. Jones,* 76 A.S.R. 655, se cita el de *Kirk v. Long, supra,* así como el de *Anderson v. Rannie,* 12 U.C.C.P. 536, este último al efecto de que una viuda no está incluída dentro del estatuto. Según la nota al caso de *State v. Wallace,* L.R.A. 1916–D 459, en adición al caso de *Kirk v. Long, supra,* de acuerdo con el caso de *Cambridge v. Sutherland* (1914), 20 D.L.R. 832 (Canadá), una viuda no puede iniciar una acción por su propia seducción basándose en un estatuto que le da tal derecho a una mujer soltera. En el caso de *Jennings v. Commonwealth,* 21 L.R.A. (N.S.) 265, se dijo: "Se ha aceptado que, en su sentido corriente y pri-

mario, la palabra 'unmarried' significa 'que nunca ha contraído matrimonio.' '' Este significado primario se acepta
en el caso de *People* v. *Weinstock, supra,* que se analizará
luego en este memorándum. La obra Words and Phrases
Judicially Defined ordena algunos de los casos y la generalidad de las citas son al efecto de que el significado ordinario y principal de la palabra es "que nunca ha contraído
matrimonio," a· pesar de que ligeras circunstancias pueden
dar a dicha palabra su otro significado de no tener esposo
o esposa de momento. Webster's International Dictionary
no cita directamente la palabra excepto para decir "Véase
'un' significando 'not married.' '' El Century Dictionary
dice: "no casado, soltero. Comúnmente la palabra significa
que la persona a quien se aplica nunca ha contraído matrimonio; pero puede aplicársele a una viuda o viudo y posiblemente a una persona divorciada.'' La antigua American
& English Encyclopaedia of Law dice: "El término frecuentemente se halla en escrituras de fideicomiso *(deeds of trust)*
y testamentos y ha sido objeto de interpretación judicial. Su
principal significado es, que nunca ha contraído matrimonio.
Pero el término tiene un significado flexible y sin duda ligeras circunstancias serán suficientes para dar a la palabra
su otro significado de 'persona que no tenga esposo o esposa
en el momento en cuestión.' '' El mismo contexto se hallará
en la Segunda Edición de la American & English Encyclopaedia of Law. Según estas autoridades, que son en su mayoría casos civiles, se sostiene generalmente que una viuda
o divorciada no están incluídas dentro del significado de la
palabra *"unmarried."* Circunstancias muy leves pueden hacer que las cortes incluyan bajo la definición de *"unmarried"*
a las viudas y divorciadas. Esto ha ocurrido frecuentemente cuando un hombre deja algunos bienes a sus hijas
solteras o a sus hermanas solteras.

En el campo de los estatutos penales las decisiones no
son tan numerosas. El caso más antiguo fué el de *Jennings*
v. *Commonwealth,* 21 L.R.A. (N.S.) 265. En dicho caso se

resolvió claramente que la palabra *"unmarried"* no era aplicable a una divorciada. En sentido contrario se pronuncian los casos de *People* v. *Weinstock*, 140 N.Y. Sup. 453; *State* v. *Wallace*, (Ore.), 154 Pac. 430, L.R.A. 1916–D 457; *State* v. *Eddy*, 167 N.W. 392.

Examinando el caso de *Jennings, supra*, debemos decir que el *ratio decidendi* incluye la idea de que la mujer seducida debe ser virgen. Por otra parte, si bien el caso de *Wallace, supra*, trata de hacer distinción del caso de *Jennings*, su razonamiento se basa en el probable espíritu benéfico del estatuto. No se discute el significado de la palabra. Igualmente, el caso de *Eddy, supra*, en el cual se cita el de *Weinstock*, tampoco discute el significado de la palabra. California probablemente resolvería al igual que lo hizo Virginia, ya que tiene el mismo concepto del *virgo intacta*. Nò nos satisface del todo el razonamiento de ninguna de estas decisiones, como tampoco nos satisface el caso de *People* v. *Weinstock*. Convenimos con el juez que escribió la opinión en el caso de *People* v. *Weinstock* en que los estatutos penales no deben interpretarse demasiado estrictamente. No obstante, desde que se dictó la opinión en el caso de *United States* v. *Wiltberger,* 5 Wheaton 76, y antes, la idea ha sido que a los estatutos penales debe dárseles una interpretación estricta. En dicho caso el Juez Presidente Sr. Marshall dijo:

". . . . La intención de la legislatura debe desprenderse de las palabras usadas. Cuando no hay ambigüedad en las palabras, no hay lugar a interpretación. El caso debe ser muy fuerte en verdad para justificar que una corte se desvía del significado claro de las palabras, especialmente en un estatuto penal, en busca de una intención no sugerida por las mismas palabras del estatuto. Para determinar si un caso cae dentro de la intención de un estatuto, su lenguaje debe autorizarnos para decirlo así. Sería en verdad muy peligroso extender el principio de que un caso que cae dentro de la razón o mal de un estatuto está comprendido en sus disposiciones, al extremo de castigar un delito que no se fija en el estatuto, por ser igualmente atroz o de naturaleza similar a los enumerados en el mismo."

En el caso de *People* v. *Nelson,* 153 N.Y. 90, 60 A.S.R. 592, 46 N.E. 1040, que fué un caso de seducción bajo promesa de matrimonio, la corte dijo que los estatutos penales deben ser interpretados estrictamente y que no podían extenderse a casos que no estuvieran cubiertos claramente por los mismos.   Este caso es de significación porque fué citado en el de *People* v. *Weinstock, supra.*   Aunque el juez que emitió la opinión en el caso de *Weinstock* no parece estar enterado de la fuerza del de *Nelson,* podríamos basar nuestra decisión enteramente en el fundamento de que como el significado corriente de la palabra *"unmarried"* no incluía a las viudas y divorciadas, un acusado tiene derecho al beneficio que surgiera por haber dejado la legislatura de hacer que su lenguaje fuera más definido.   El mal a que se llegaría no debería desempeñar un papel importante a menos que la intención del estatuto sea clara.

Podría decirse que éste es también el principal razonamiento del caso de *Jennings, supra.*   El apelante ha confiado mucho en la decisión del caso de *People* v. *Weinstock.* No es esa la opinión de una corte de apelaciones, ni mucho menos de la corte de última instancia del Estado de Nueva York.   La corte examina un gran número de autoridades y cita decisiones del Estado de Nueva York y de otros estados en que la palabra *"unmarried"* se ha extendido hasta incluir las viudas, y entonces dice:

"La División de Apelaciones de la Corte Suprema en Ex parte Oakley, 67 App. Div. 493, etc., al discutir el caso de Dalrymply v. Hall, 16 Ch. Div. 717, citó un sumario de dicho caso al efecto de que *en ausencia del contexto* que demuestre una intención contraria, la palabra *'unmarried'* debe interpretarse de acuerdo con su significado original y primario como que quiere decir 'que nunca ha contraído matrimonio,' y, por consiguiente, que el legado a los hijos de B no surtía efecto por ser éste viudo.   Dicho caso, sin embargo, es igualmente una autoridad en el sentido de que cuando el contexto demuestra una intención distinta, la palabra *'unmarried'* no debe definirse como 'persona que nunca ha contraído matrimonio.' "

Hemos leído muy cuidadosamente el caso de *People* v.

*Weinstock,* y no vemos qué pudo haber en el estatuto de Nueva York que indujera al Juez Freschi a hallar palabras en el contexto que extendieran el significado primordial de la palabra *"unmarried."* El estatuto de Nueva York es casi palabra por palabra igual al de Puerto Rico. Supongamos, sin embargo, que nunca se hubiesen resuelto casos como el de *United States* v. *Wiltberger,* y que meramente tuviéramos ante nuestra consideración el hecho de que varias cortes han interpretado en forma distinta el significado de la palabra *"unmarried."* Entonces nos confrontaríamos con un caso en que una palabra ha sido usada con ambigüedad en el estatuto. ¿Tenemos algún medio de averiguar lo que la legislatura quiso decir al usar las palabras *"unmarried female"*?

Los artículos 58 y 59 del Código de Enjuiciamiento Civil dicen así:

"Art. 58. Una mujer soltera puede deducir, como demandante, una acción por haber sido seducida, y para obtener por medio de dicha acción el importe de los daños pecuniarios o ejemplares que se decretasen a su favor.

"Art. 59. Un padre, o si éste hubiese muerto o abandonado a su familia, la madre, podrá deducir una acción como demandante por la seducción de una hija que no hubiese llegado a su mayoría de edad al ocurrir la seducción, y asimismo podrá el tutor deducirla por la seducción de una pupila menor de edad al ocurrir la seducción, aunque la hija o pupila no viviese con el demandante, ni estuviese a su servicio al tiempo de la seducción o después de ella, ni mediare pérdida de servicios."

El artículo 59 da a entender que la Legislatura tenía en mente en casos de seducción, a mujeres que nunca habían contraído matrimonio.

Más importante que esto, sin embargo, es la cuestión de la interpretación contemporánea según lo expresan las máximas *Optima est legum interpres consuetudo,* 25 R.C.L. 1042; *Contemporanea expositio est optima et fortissima in lege,* 12 C.J. 1313. Cuando se han usado las palabras *"unmarried female"* en los códigos de Puerto Rico, han sido traducidas invariablemente como "mujer soltera." Esto es

·cierto no sólo en cuanto al artículo 261 que estamos discutiendo, sino también en cuanto al 260. Desde luego, el artículo 260 habla específicamente de personas menores de 21 .años. Este artículo se refiere a toda persona que por medio de amaños indujere o engañare a una mujer soltera a entrar en alguna casa de lenocinio, etc. Nos imaginamos que nadie discutiría que este artículo debe aplicarse a viudas y divorciadas menores de 21 años de edad. El artículo 58 del Código de Enjuiciamiento Civil citado más arriba ha sido traducido en forma similar.

Cuando se aprobaron en 1902 ó 1904 estos códigos, la Legislatura de Puerto Rico se componía por lo menos de una cámara en que se llevaban a cabo los procedimientos enteramente en castellano. Cuando se presentó el proyecto de ley para su adopción, hallaron los legisladores únicamente la palabra ''soltera'' en el estatuto y la mente de por lo menos una gran parte de los legisladores estuvo fija en dicha palabra ''soltera.'' No tenemos aquí, como lo tiene ahora el· Estado de Louisiana, un estatuto que haga que el inglés sea el idioma legal, y tampoco lo teníamos al tiempo en que estos estatutos fueron aprobados.

El apelado también nos ha presentado una enmienda al artículo 250 del Código de Enjuiciamiento Criminal, aprobada en 1909, que dispone:

''Art. 250.—En juicio por el delito de promover o intentar la promoción de un aborto, o por contribuir o ayudar en su perpetración, por seducir con engaño, corromper por medio de halago o apoderarse de una mujer soltera, menor de veinte y cinco años, hasta entonces reputada por casta, con objeto de prostituirla, o contribuir y ayudar a ese fin, o en juicio por el delito de seducción bajo promesa de matrimonio, o por violación, el acusado no podrá ser declarado convicto por la declaración de la mujer agraviada, a menos que su declaración se corrobore con otras pruebas.''

Esta fué una enmienda presentada en español y demuestra la comprensión legislativa.

El caso de *El Pueblo* v. *Martínez*, 13 D.P.R. 248, fué un

caso de seducción bajo promesa de matrimonio.    En el curso
de la opinión confirmando la sentencia de la corte inferior,
este tribunal, por voz del Juez McLeary, dijo:

"As far as concerns the proposition designated by the letter 'D'
we may say that all women are born single and the law presumes
that a status once established continues until there is some proof
presented of a change therein.    Then if the injured female was
married it devolved on the defendant to prove the fact."    (Princi-
pio que no se siguió en un caso posterior.)    "But all the circum-
stances go to prove the singleness of the injured woman."

"*Singleness*" es una palabra inconsistente con la idea de
casada o divorciada.    Esta opinión también da alguna luz
en la interpretación que debe dársele al lenguaje usado.

El caso de *Cohens* v. *Virginia,* 6 Wheaton 264, dió én-
fasis a la interpretación contemporánea.    Sin embargo, he-
mos sido impresionados por el lenguaje usado por la Corte
Suprema del Estado de Pennsylvania en el caso de *Com-
monwealth* v. *Paine,* 207 Pa. State 245, 56 Atl. 317.    La corte
dijo:

". . . .   Pero en caso de legislación dudosa, debido bien a am-
bigüedad de la expresión de una sola ley o a la obscuridad o inconsis-
tencia que surge de varias leyes sobre el mismo asunto, la interpre-
tación contemporánea es siempre importante en lo que al verdadero
significado se refiere.    Si en opinión del foro y del pueblo intere-
sado que vivía entonces y que fué afectado de cerca por tal legisla-
ción tenía un significado determinado dentro de los varios que eran
posibles, las cortes en años venideros se mostrarán reacias a adop-
tar otra interpretación, aunque tal vez, al examinar detenidamente
las leyes, podrían no estar inclinadas a estar de acuerdo con la in-
terpretación contemporánea."

Hicimos referencia al hecho de que un número de cortes
ha interpretado las palabras "de previo carácter casto" como
que significan *virgo intacta.*    Ahora bien, aunque es nues-
tra intención adherirnos a las decisiones de esta corte de
que una mujer reformada o una prostituta podrían ser se-
ducidas bajo promesa de matrimonio, sin embargo, como en
un número de estados las palabras "de previo carácter casto"

necesariamente excluirían a las viudas y divorciadas, un estatuto que usa las palabras *"unmarried female"* sin más debe entenderse que no incluye tales viudas o divorciadas.

Si tuviésemos ante nos tan sólo un estatuto aprobado en el idioma inglés, tal vez tendríamos mayores dudas, pero en vista de lo que pudiéramos llamar la aceptación legislativa de la palabra "soltera" en la traducción de *"unmarried,"* no creemos que la sentencia de la corte inferior deba ser alterada y *procede su confirmación.*

El Juez Asociado Señor Hutchison está conforme con la sentencia.